**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0734n.06
Filed: December 2, 2008

**No. 07-3974**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **GREGORY T. MCCARTHY**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| **MAITLAND PLACE, D.D.S.**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: CLAY and KETHLEDGE, Circuit Judges; and OLIVER, District Judge.**[*]

**OLIVER, District Judge.** Plaintiff-Appellant Gregory T. McCarthy ("McCarthy"),

proceeding *pro se*, appeals the order of the district court granting Defendant-Appellee Maitland

Place, D.D.S.'s ("Dr. Place") motion for summary judgment on McCarthy's 42 U.S.C. § 1983 action

for alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment.

For the following reasons, we **REVERSE** the judgment of the district court.

**I. BACKGROUND**

**A.    Factual History**

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District
of Ohio, sitting by designation.

McCarthy is a former inmate of the Chillicothe Correctional Institute ("CCI") in Chillicothe, Ohio. While incarcerated at CCI, McCarthy experienced a number of dental problems for which he was examined by Dr. Place. (J.A. at 25.) Dr. Place contracted with the Ohio Department of Rehabilitation and Corrections ("ODRC") to provide dental care for inmates. (*Id.*) Dr. Place's duties included "providing dental care to inmates [such as] filling teeth, extracting teeth and cleaning teeth in accordance with ODRC policies." (*Id.*)

During an initial examination on June 6, 2002, McCarthy complained of a severe toothache. (J.A. at 3.) Dr. Place discovered that a cavity was the cause of McCarthy's pain and recommended a permanent filling for McCarthy's tooth. Dr. Place also determined that McCarthy had several other cavities and that two of McCarthy's teeth needed to be extracted. (J.A. at 26.)

Following McCarthy's examination, Dr. Place decided to extract McCarthy's teeth one at a time. (J.A. at 36.) According to Dr. Place, the teeth needed to be removed one at a time because the teeth that were to be extracted were on opposite sides of McCarthy's mouth and the extraction of both teeth at once could inhibit McCarthy's ability to chew. (*Id.*) Thereafter, McCarthy was placed on a list for the required extractions and fillings. (J.A. at 26.) According to Dr. Place, "[t]he lists are required so inmates are treated in order for when the corresponding treatment was determined as being necessary." (*Id.*)

According to McCarthy, he told Dr. Place that the teeth that needed to be extracted "were not bothersome" and instead McCarthy requested that the fillings be given priority "because of the pain." (J.A. at 3.) In response, Dr. Place stated that he would not proceed with treatment unless McCarthy abided by the treatment plan that called for the extractions first. (*Id.*) Dr. Place provided McCarthy with a packet of ibuprofen for the pain, which contained approximately six tablets. (J.A. at 4.)

Apparently displeased with the pain medication prescribed by Dr. Place, McCarthy filed an "Informal Complaint" and, later, a "Formal Grievance." (*Id.*)

On July 31, 2002, the first of McCarthy's teeth were extracted by Dr. Place. (J.A. at 26.) However, the root of the tooth remained, and Dr. Place scheduled McCarthy for a follow-up visit. (*Id.*) McCarthy continued to complain regarding the pain caused by his cavity and was given a packet of ibuprofen by Dr. Place to alleviate the pain. (*Id.*)

On August 21, 2002, McCarthy was seen by Dr. Place for the removal of the root of his tooth. (J.A. at 26.) On October 8, 2002, McCarthy's second tooth was extracted by Dr. Corbitt, another dentist under contract with ODRC. (*Id.*) In November of 2002, McCarthy alleges that he could "hardly eat Thanksgiving dinner because of [the] toothache. Angry, scared and in pain, Plaintiff [had] no where else to turn and [wrote] an angry letter to [the] Warden and Chief Inspector in desperation shaming their inaction." (J.A. at 5.) On January 29, 2003, Dr. Place filled the tooth that was causing McCarthy pain. (J.A. at 26.) On May 6, 2003, Dr. Corbitt filled McCarthy's remaining cavities. (*Id.*) In June of 2003, McCarthy was seen by CCI dental staff regarding complications with the fillings administered in May. (J.A. at 5, 26-27.)

**B.     Procedural History**

On February 1, 2005, McCarthy filed a complaint, pursuant to 42 U.S.C. § 1983, with the United States District Court for the Southern District of Ohio, alleging that Dr. Place and others were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (J.A. at 3.) McCarthy contended that Dr. Place was deliberately indifferent to his serious dental needs as a result of the delay in the treatment of his cavity and the failure to provide more effective pain medication.

Dr. Place moved for summary judgment, asserting that he was entitled to qualified immunity, and filed an accompanying brief and affidavit in support of summary judgment. In his affidavit, Dr. Place contended that he provided prompt and adequate dental treatment while abiding by the guidelines established by the ODRC. Additionally, Dr. Place contended that he "provided ibuprofen to alleviate the pain in the maximum amounts provided." (J.A. at 26.) It does not appear, however, that the ODRC guidelines were entered into the record. (Pl's Br. at 5.) McCarthy, on the other hand, opposed the motion and provided statements from other inmates who received dental treatments at CCI. (J.A. at 23.) In particular, McCarthy provided a statement from Richard Carter, who described receiving a temporary filling to alleviate the pain caused by a cavity. (Appellant's J.A. at 1; J.A. at 11.)

After reviewing the submissions of the parties, a magistrate judge issued a report and recommendation denying Dr. Place's motion for summary judgment. (Appellant's J.A. at Exhibit 2.) In denying summary judgment, the magistrate judge found that McCarthy established a genuine issue of material fact with respect to the seriousness of his dental problem and with respect to the deliberate indifference displayed by Dr. Place in his treatment of McCarthy's dental problem. (*Id.*) Specifically, relying on *Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998), the magistrate judge found that there was a genuine issue of material fact regarding deliberate indifference because of the allegations that Dr. Place was taking a less efficacious treatment route and the supporting statements from CCI inmates. (*Id.*)

Dr. Place filed an objection to the magistrate judge's report and recommendation with the district court, alleging that the magistrate judge erred in finding a dispute of material fact and in denying qualified immunity. (J.A. at 28.) The district court sustained the objection, reversed the

magistrate judge and entered an order granting summary judgment in favor of Dr. Place. The district court, however, did not reach the question of qualified immunity. McCarthy now timely appeals.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo*. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir. 1996). Summary judgment is appropriate if, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the moving party, Defendant bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of McCarthy's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). McCarthy, as the non-moving party, must then present sufficient evidence from which a jury could reasonably find for him. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). This court must then determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, this court must draw all reasonable inferences in favor of McCarthy. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997).

## III. LAW AND ANALYSIS

Section 1983 establishes "a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 656 (6th Cir. 2002). To prevail in a § 1983 claim, therefore, McCarthy must prove that Dr. Place, while acting under the color of state law, violated

his constitutional rights. In *West v. Atkins*, 487 U.S. 42 (1988), the Supreme Court held that a private doctor under contract to provide medical care to inmates at a state prison acted under the color of state law and was therefore subject to suit under § 1983. *Id.* at 56. The Supreme Court reached this conclusion after noting that "[c]ontracting out state prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.*

Inasmuch as Dr. Place acted under the color of state law when he provided treatment to McCarthy, this Court must determinate whether McCarthy created a genuine issue of material fact with respect to his alleged Eighth Amendment violation. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" because the failure to do so "may actually produce 'physical torture or a lingering death'" or "[i]n less serious cases, . . . may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* at 103. The failure to provide such medical care may result in a violation of the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Id.*

In *Estelle*, the Supreme Court held that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Id.* at 104 (internal citations omitted). The Court has noted, however, that the term deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*,

511 U.S. 825, 835 (1994). Indeed, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105. However, a litigant establishes a cognizable Eighth Amendment violation where it can be shown that prison officials were deliberately indifferent to the medical needs of prisoners, thus violating the evolving standards of decency that undergird the Eighth Amendment. *Farmer*, 511 U.S. at 835.

The failure to address a serious medical need rises to the level of a constitutional violation where both objective and subjective requirements are met. *See id.* at 833. First, the failure to protect from risk of harm must be objectively "sufficiently serious." *Id*. To meet this requirement, McCarthy must show "the existence of a sufficiently serious medical need." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). Second, to satisfy the subjective requirement, McCarthy must show "a sufficiently culpable state of mind in delaying medical care." *Id.* This subjective requirement is met where a plaintiff demonstrates that prison officials acted with "deliberate indifference" to a serious medical need. An official is deliberately indifferent where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. However, "a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (quoting *Farmer*, 511 U.S. at 835). Put simply, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for

a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Dental needs have been recognized as falling into the category of "serious medical needs" inasmuch as courts have observed that "[d]ental care is one of the most important needs of inmates." *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980). Nevertheless, not all dental problems constitute serious medical needs. Rather, "[a] cognizable claim regarding inadequate dental care, like one involving medical care, can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). McCarthy's cavity and toothache were left untreated for more than seven months. During this time, McCarthy was experiencing significant pain and discomfort, so much so that he experienced difficulty eating solid foods on Thanksgiving and on other occasions. Furthermore, both the Magistrate Judge and the District Judge found that McCarthy presented sufficient evidence to create a genuine issue of material fact on this element and Dr. Place does not dispute this finding on appeal. Because there is a genuine issue of material fact regarding McCarthy's serious medical condition, the court's analysis turns to the issue of deliberate indifference.

As noted above, a defendant is deliberately indifferent where it can be shown that an official disregarded a known risk of serious harm to inmate health or safety. *Farmer*, 511 U.S. at 837. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound is state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). However, prison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment.

Indeed, deliberate indifference may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir.2002) (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *see also Chance*, 143 F.3d at 704.

In *Chance*, the Second Circuit found that an allegation that dentists consciously failed to fill an inmate's cavity, thus causing significant pain, stated a claim of deliberate indifference in violation of the Eighth Amendment. The plaintiff, proceeding *pro se*, alleged that prison dentists were deliberately indifferent to his serious dental needs because they denied him adequate treatment for "an overbite that made it difficult to chew or speak" and "a cavity that caused him 'great pain.'" 143 F.3d at 700. The plaintiff alleged that the dentists recommended extractions of his teeth that second opinions revealed were unnecessary and that the dentists had a financial incentive in recommending extractions rather than less invasive treatments, such as fillings. The court held that such allegations established deliberate indifference in violation of the Eighth Amendment inasmuch as the dentists could be said to have recklessly disregarded the risk to plaintiff as a result of decision-making that was not guided by "sound medical judgment." *Id.* at 704. In other words, the dentists consciously took a less efficacious route in treating Chance's serious ailments. *Id.* at 703 ("In certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan.").

Before the district court, McCarthy alleged that Dr. Place was deliberately indifferent to his serious medical needs as a result of the delay in pulling his teeth prior to filling his cavity and Dr. Place's failure to more effectively treat the pain caused by the cavity until a permanent filling could

be scheduled. In support of these allegations, McCarthy offered the affidavits of two CCI inmates. One inmate, Russell Billiter, stated that, contrary to Dr. Place's treatment plan, prison dentists pulled more than one of his teeth at a time. (J.A. at 23.) Another inmate, Richard Carter, stated that when he suffered from a painful cavity, instead of being given ibuprofen, "Dr. Place drilled all the decay out and packed it with something he said was temporary and that he would put me on the 'filling list.' Months later after finishing all [of] my teeth that hurt[,] he filled the tooth that he had drilled out and packed." (Appellant's J.A. at Ex. 1.) In response, Dr. Place asserted that he did not remove all of McCarthy's teeth at once because the two teeth were on opposite sides of McCarthy's mouth and "[i]n such cases, only one extraction is done until completion so as to allow the patient to be able to still chew while eating." (J.A. at 36.) Further, Dr. Place submitted an affidavit defending his treatment of McCarthy's pain, stating that he "freely admit[ted] that for Plaintiff's complaint of a toothache, I provided ibuprofen to alleviate the pain in the maximum amounts permitted." (J.A. at 27.) Dr. Place, however, provided no explanation regarding his failure to temporarily fill McCarthy's cavity to minimize pain.

The district court rejected McCarthy's claim, suggesting that the affidavits of Billiter and Carter were entitled to very little weight because "the dental records of these other inmates have not been made part of the record" and "their affidavits do not indicate which teeth were extracted or filled." (J.A. at 48.) Therefore, the district court found that McCarthy did not present sufficient evidence to establish a genuine issue of material fact regarding whether Dr. Place was deliberately indifferent to McCarthy's medical needs. This court finds, as discussed below, that while the district court's analysis was correct regarding the timeliness of McCarthy's extractions, McCarthy did

present sufficient evidence to create a genuine issue of material fact with respect to Dr. Place's treatment of the pain caused by his cavity.

McCarthy argued that Dr. Place was deliberately indifferent to his dental needs based on the slow pace at which his teeth were extracted, which caused him to suffer pain caused by the cavity for more than seven months. Dr. Place asserted that the two teeth could not be removed simultaneously because they were on opposite sides of the mouth. Dr. Place's assertion demonstrates that he did not recklessly disregard the substantial pain that McCarthy was in when he chose this course of action. Rather, Dr. Place considered the consequences of simultaneous extraction and took another course. Thus, Billiter's affidavit, indicating he had more than one extraction on the same day without more, does not undermine Dr. Place's assertions or establish a dispute of material fact regarding the timeliness or adequacy of the extraction of McCarthy's teeth.

McCarthy, however, presented evidence that Dr. Place was deliberately indifferent to his serious medical needs by showing that Dr. Place was aware of the significant pain McCarthy was experiencing due to his cavity, yet he failed to relieve this pain for over seven months. McCarthy demonstrated that Dr. Place could have prescribed a temporary filling inasmuch as he had done so for other inmates, but instead chose a less efficacious treatment route by giving McCarthy packets of ibuprofen. *See Terrance*, 286 F.3d at 843. Even if one credits Dr. Place's assertion that McCarthy was given the maximum amount of the pain reliever that was permitted under the ODRC guidelines, which were not included as part of the record, a reasonable jury could find, based on other evidence in the record, that Dr. Place disregarded a risk of serious harm when he failed to temporarily fill McCarthy's cavity despite the fact that he knew of the pain McCarthy was

experiencing and that he was familiar with more effective treatment options. Thus, the district court erred in granting summary judgment in favor of Dr. Place.

## IV. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's judgment in favor of Dr.Place and **REMAND** this case back to the district court for further proceedings in accordance with this opinion.