RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0342p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

VERNARD A. JONES, SR., Personal
Representative of the Estate of Vernard A.
Jones, Jr.,
                    *Plaintiff-Appellant,*

       *v.*

MUSKEGON COUNTY; DAVID DEITRICK;
NANCY MASTEE; SHERRY MALENKO;
WILLIAM YONKER; WARNER WATSON; GREG
ZYLSTRA; ERIC ANDERSON; DAN JOHNSON;
KARENA TABAK; STEVEN FARKAS; ROGER
SWAN; DAVID GUTOWSKI; RICHARD TOPP;
IVAN MORRIS; GEORGE SAINS; THOMAS
GEOGHAN; TROY OLSON; LAURA LEWIS; JOE
BEAL; JERID HERMAN; MATTHEW SMITH;
GREG STENHOLM; JOY PORT; SHERRY
WRIGHT; GILBERT PIERO,
                    *Defendants-Appellees.*

No. 09-2125

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-00388—Janet T. Neff, District Judge.

Argued: July 28, 2010

Decided and Filed: November 4, 2010

Before: GILMAN and COOK, Circuit Judges; OLIVER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Steven L. Skahn, Grand Rapids, Michigan, for Appellant. Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, Dale A. Robinson, RUTLEDGE MANION RABAUT TERRY & THOMAS P.C., Detroit,

_____

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

Michigan, Steven L. Kreuger, SECREST WARDLE, Grand Rapids, Michigan, for Appellee.  **ON BRIEF:**  Steven L. Skahn, Grand Rapids, Michigan, for Appellant. Joseph Nimako, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., Livonia, Michigan, Dale A. Robinson, RUTLEDGE MANION RABAUT TERRY & THOMAS P.C., Detroit, Michigan, Steven L. Kreuger, SECREST WARDLE, Grand Rapids, Michigan, for Appellee.

————————————

**OPINION**

————————————

SOLOMON OLIVER, JR., Chief District Judge.  Plaintiff-Appellant Vernard A. Jones, Sr. ("Plaintiff" or "Jones's father"), personal representative of the Estate of Vernard A. Jones, Jr., appeals the order of the district court granting summary judgment on all claims in favor of Defendants-Appellees Dr. David Deitrick, M.D. ("Dr. Deitrick"); Nancy Mastee, Sherry Malenko, and William Yonker (collectively, "Nurses" or "nursing staff"); Muskegon County (the "County"); and Eric Anderson, Joe Beal, Steven Farkas, Jerid Herman, Dan Johnson, Thomas Geoghan, David Gutowski, Laura Lewis, Ivan Morris, Troy Olsen, Gilbert Piero, Joy Port, George Sains, Matthew Smith, Greg Stenholm, Roger Swan, Karena Tabak, Richard Topp, Warner Watson, Sherry Wright, and Greg Zylstra (collectively, "Corrections Officers").  The district court found in favor of Defendants on Plaintiff's 42 U.S.C. § 1983 claim against all Defendants and his state-law claims for gross negligence and intentional infliction of emotional distress against Defendant Nurses, Corrections Officers, and the County.  For the following reasons, we **AFFIRM** the district court's order granting summary judgment in favor of Defendants-Appellees Corrections Officers, Nurse Malenko, Dr. Deitrick, and the County, but **REVERSE** the order granting summary judgment in favor of Defendants-Appellees Nurses Mastee and Yonker on Plaintiff's 42 U.S.C. § 1983 and gross negligence claims.  We **AFFIRM** the district court's order granting summary judgment in favor of all Defendants-Appellees on Plaintiff-Appellant's state-law claims for intentional infliction of emotional distress.  Finally, we **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A.    Factual History

Plaintiff is the father and personal representative of Vernard A. Jones, Jr. ("Jones"), now deceased, a former inmate at Muskegon County Jail. Jones was held at the jail as a pretrial detainee from September 24, 2004, until May 5, 2005. At the start of Jones's incarceration, his self-reported weight was 170 pounds, and his height was 5'11". On Jones's Inmate Intake Form, he indicated that he had a sexually-transmitted disease, but otherwise reported no health problems. Approximately one month later, Jones completed a health survey form in which he likewise did not report any significant medical issues. Within the next few months, however, Jones began to experience significant weight loss and serious gastro-intestinal problems.

Beginning in November of 2004, Plaintiff maintains that Jones had been complaining of abdominal pain and stopped eating his meals. Around this time, Plaintiff further contends that Jones regularly requested medical assistance by submitting medical request forms ("kites"). These kites, according to Plaintiff, were repeatedly ignored by prison officials and the nursing staff. Plaintiff supports these assertions primarily through the submission of affidavits from five former inmates: Maurice Poole ("Poole"), Zackee Lawson ("Lawson"), Lawrence Dowdell ("Dowdell"), Ronnie Caviness ("Caviness"), and Diana Yager ("Yager"). These inmates assert that Jones's kites were routinely ignored, that the prison officials did not assist Jones when he was visibly ill and not eating meals, and that prison personnel were overheard stating that Jones was "faking" his illness and that "inmates were not supposed to feel good." The affidavits of Lawson, Yager, and James Ring ("Ring"), another former inmate, also claim inaction on the part of the prison staff in attending to their own serious medical needs.

Defendants, on the other hand, assert that no prison officials were aware that Jones was ill between November 2004 and the end of March 2005, and that when it became known that Jones needed medical care, medical assistance was provided. On March 26, 2005, Jones was taken to the jail medical department for the first time where

his condition was assessed by the nursing staff, which consists of two full-time nurses, William Yonker and Sherry Malenko, and one part-time nurse, Nancy Mastee. According to Yonker's note in the medical chart, Jones weighed 124 pounds, having lost forty six pounds over a six-month period. Yonker ordered a blood test and a test for an ulcer, and referred Jones to the prison doctor, Dr. David Deitrick. Dr. Deitrick examined Jones on March 29, suspected that he was suffering from obstipation, and therefore provided him with a laxative.

On April 4, Jones was examined again by the nursing staff, this time by Nurse Malenko. According to Malenko's entry in the medical chart, Jones complained of sharp abdominal pain and weighed 117 pounds, seven pounds less than he weighed just nine days earlier and fifty-three pounds less than he weighed at the start of his detention. Malenko treated Jones with Pepto Bismol and scheduled a meeting with Dr. Deitrick for the following day. On April 5, Dr. Deitrick saw Jones and scheduled a CT scan, liver profile, and kidney profile.

From April 5 through April 8, the jail medical personnel continued to see Jones for complaints of persistent stomach pain. On April 8, Jones's condition became dire, and he was transported to Hackley Hospital. Numerous doctors at the hospital described his condition as "emaciated," "cachectic," and "clinically dehydrated." Exploratory surgery was performed on April 9, and a large cancerous mass was found. The doctors determined that they should not attempt to remove the mass. On April 20, Jones was discharged from Hackley Hospital and returned to the jail with instructions that he be placed on hospice care. During the late evening hours of May 4 and early morning hours of May 5, Jones's colostomy bag broke, and he was found lying on his cell floor, at which time an ambulance was called. Jones was pronounced dead at 5:10 a.m. on May 5, 2005.

**B.      Procedural History**

On April 17, 2007, Plaintiff, on behalf of Jones, filed suit against Defendants, asserting the following three claims: (1) violation of civil rights pursuant to 42 U.S.C. § 1983; (2) gross negligence; and (3) intentional infliction of emotional distress.  The parties stipulated to the dismissal of the state-law claims against Dr. Deitrick. Defendants, thereafter, filed separate Motions for Summary Judgment.  On August 5, 2009, the district court granted summary judgment on all counts for each of the Defendants.  With regard to the Section 1983 claims, the district court stated that Plaintiff failed to present evidence demonstrating that any Defendant was deliberately indifferent to the serious medical needs of Jones.  Specifically, the court found that Plaintiff's claim against Dr. Deitrick failed because it was beyond dispute that the doctor had provided medical assistance to Jones.  The court noted that regardless of how ineffective that assistance may have been, his medical care was not so "woefully inadequate" as to amount to deliberate indifference.  As to the Nurses and Corrections Officers, Plaintiff's claims were primarily supported by the affidavits of former inmates. The district court found that these affidavits did not create a genuine issue of material fact, stating that:

> While the Court does not find the averments in these affidavits so devoid of merit or inadmissible that they should be discounted in their entirety, they are nevertheless lacking in specificity as to time, context and conduct such that they provide no basis for finding that particular officers, or the officers generally, had sufficiently culpable minds in denying Jones medical care.

*Jones v. Muskegon County*, No. 1:07-cv-388, 2009 U.S. Dist. LEXIS 68136, at *16 (W.D. Mich. Aug. 5, 2009).  According to the court, the affidavits were similarly "insufficient to establish the requisite culpable state of mind" with respect to the nursing staff.  *Id*. at *20.  Lastly, the court found that the County was not liable because the several affidavits that Plaintiff provided from other inmates about their medical treatment were insufficient to prove a "policy" or "custom" of deliberate indifference. *Id.* at *31-33.  Therefore, the court granted summary judgment in favor of all Defendants on Plaintiff's 42 U.S.C. § 1983 claim.

The district court similarly concluded that summary judgment was warranted in Defendants' favor on Plaintiff's state-law claims. The court reasoned that because Plaintiff could not show conduct amounting to deliberate indifference in connection with his Section 1983 claim, Plaintiff failed to show any genuine issue of material fact with respect to the state-law gross negligence claim. It lastly held that Plaintiff could not satisfy the standard for intentional infliction of emotional distress because "[t]he allegations against defendants do not rise to the level of extreme and outrageous conduct." *Jones*, 2009 U.S. Dist. LEXIS 68136 at *36.

Ultimately, it was the court's view that, although there may have existed serious deficiencies in the medical care provided by Muskegon County Jail and its employees, it was undisputed that some modicum of care was provided. In the court's view, the failures in moral responsibility that may have taken place with respect to the care provided to Jones and other inmates were simply not enough to give rise to legal liability. On November 2, 2009, Plaintiff instituted the current appeal. He argues that the district court erred in dismissing his case because he provided sufficient evidence to give rise to a genuine issue of material fact with regard to each of his claims against Defendants.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment *de novo. Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1176 (6th Cir. 1996). Pursuant to Federal Rule of Civil Procedure 56(c)(2), summary judgment is appropriate if the pleadings together with depositions, answers to interrogatories, admissions on file, and affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of Plaintiff's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-moving party, on the other hand, must present sufficient evidence from which a jury could reasonably find for him. *See Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The court then must determine "whether the evidence presents

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the court must draw all reasonable inferences in favor of the non-moving party. *See Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997).

## III. LAW AND ANALYSIS

### A.     Count I - Section 1983 Claim

Section 1983 establishes "a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 656 (6th Cir. 2002). To prevail on this claim, a plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). However, "[u]nder the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known.'" *Id.* (citations omitted). Thus, qualified immunity in any given case is determined by a two-part inquiry: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* (citations omitted).

In the instant case, Plaintiff contends that Jones was subjected to cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution. The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Jones, as a pretrial detainee, is

"analogously protected under the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

A Section 1983 claim asserting "[a] constitutional [violation] for denial of medical care has objective and subjective components." *Id.* The objective component requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Such a medical need has been defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore*, 390 F.3d at 895 (quoting *Brown*, 207 F.3d at 867). Officials have a sufficiently culpable state of mind where officials act with "deliberate indifference" to a serious medical need. *Farmer*, 511 U.S. at 834 (citations omitted). The Supreme Court has defined "deliberate indifference" as being more than mere negligence but less than acting with purpose or knowledge. *Id.* at 835. Instead, the prison official must have acted with a state of mind similar to recklessness. *Id.* at 836. Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk. *Id.* at 837; *see also Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

In the instant case, the parties agree that Plaintiff has met the objective element of a sufficiently serious medical need because Jones was diagnosed with colorectal cancer and died as the result of his illness. The central issue, therefore, is whether Plaintiff presented evidence to establish the subjective component that each Defendant acted with deliberate indifference toward Jones's serious medical needs.

### 1. Defendant Corrections Officers

Plaintiff claims that twenty-one correction officers were deliberately indifferent to Jones's serious medical needs. He claims that these officers worked in the area where Jones was housed, were aware of his serious medical condition, yet failed to render medical assistance. To support this contention, Plaintiff relies on a chart listing the days each of the officers worked from November 2004 to May 2005 and a Daily Staff Work Station, which lists the officers assigned to Jones's area from February to May 2005. Plaintiff asserts that the guards listed in these charts are those who would have received Jones's kites and who would have observed him not eating his meals and his subsequent weight loss.

Plaintiff also submitted the affidavits of Lawson, Poole, Yager, and Dowdell, who contend that they witnessed Jones's deteriorating condition, his failed attempts to obtain medical assistance, and conversations among guards evincing knowledge of and indifference to Jones's condition. Specifically, in Dowdell's affidavit, he states that he was housed in a cell near Jones for "at least one and one-half months" and that Jones was left on lock-down up until his death. He also claims that Jones would tell the officers that he needed to see a nurse, that they would respond that he should write up a kite, and that he would explain that he had previously done so without any response. Dowdell also states that Jones did not eat anything for weeks and that "the guards were there when the food was delivered" and would know that he was not eating. According to the affidavit of Yager, she overheard Officers Beal, Gutowski, and Morris stating that Jones was complaining of stomach pain, that Jones thought he might have cancer, and that he had been sending kites out every day. She claims that the officers agreed that Jones was faking his condition. In Poole's affidavit, he stated that he "observed Mr. Jones sending kites for medical attention several times a week and they were never answered." He also stated that, when Jones would complain to the guards, "different guards" would respond that they would "get to [him] when we get to [him]." Lawson also stated that he noticed that Jones was repeatedly sending out medical kites and that while "the kites would be gone," he was not called down to see a nurse.

These affidavits, along with the officers' assignment charts, are insufficient to establish Plaintiff's Section 1983 claim against the Corrections Officers. The affidavits refer to "guards" in a general sense or to several guards engaged in a conversation about Jones without specifying wrongdoing attributable to any particular defendant. The affidavits do not specify which officers were making comments, which officers ignored his requests for medical care, or which officers observed him not eating food for weeks. Instead, Plaintiff seeks to implicate all twenty-one named guards through the affiants' generalized statements regarding "the guards." Additionally, the assignment charts do not assist in identifying which guards purportedly engaged in wrongful conduct. Instead, they merely indicate which officers were around his cell during the relevant six-month period. None of the above-discussed evidence is such as to implicate any specific officer. As such, it does not raise a genuine issue of material fact regarding the liability of any officer.

Furthermore, as recognized by the district court, neither the affidavits nor the assignment charts indicate whether it was in fact the guards who were responsible for Jones's lack of medical attention. The parties agree that it is the guards' responsibility to deliver the medical kites to the nursing staff, and it is the nursing staff's responsibility to call the inmate to their office for medical attention. Although these affidavits could plausibly demonstrate that Jones's medical kites were being ignored, they do not demonstrate to whom the failure was attributable — whether the guards for not delivering them, or the nurses for not calling him to the medical center. The affidavits do not indicate that the guards failed to deliver the medical kites to the nurses. They indicate only that Jones was not being called for medical treatment. As such, these affidavits and the assignment chart fail to create a genuine issue of material fact with regard to Plaintiff's Section 1983 claim against Defendant Corrections Officers.

Plaintiff does, however, specifically identify the purported wrongful conduct of one officer. He claims that Officer Laura Lewis was deliberately indifferent to Jones's serious medical needs on the date that he died. Plaintiff cites statements from Officer Lewis's deposition, in which she admitted that she left Jones in his cell despite his

deteriorating condition without immediately calling an ambulance. This evidence, however, is insufficient to create a genuine issue of material fact because Lewis went on to state in her deposition that she believed the decision whether to call an ambulance did not rest with her but with command. Furthermore, a report filed by Officer Lewis on May 5, 2005, which describes her interaction with Jones in the hours before his death, indicates that prior to his death, Officer Lewis attended to Jones's medical needs and made efforts to make him more comfortable. Accordingly, we find that the district court properly granted summary judgment in favor of the Corrections Officers on Plaintiff's Section 1983 claim.

### 2. *Defendant Jail Nurses*

Plaintiff claims that the three jail nurses, Mastee, Yonker, and Malenko, were deliberately indifferent to Jones's serious medical needs. Plaintiff asserts that these nurses were aware of Jones's medical condition for five months prior to March 26, 2005 and yet ignored his medical requests, and were further deliberately indifferent in the manner in which treatment was provided to Jones from March 26, 2005 until his death on May 5, 2005. According to the district court, "[t]here is no evidence that the nurses were aware of Jones' [condition] until March 26, 2005," and "the generalized averments in the inmate affidavits are insufficient to establish the requisite culpable state of mind with respect to any particular nurse." *Jones*, 2009 U.S. Dist. LEXIS 68136, at *20.

The district court, however, did not fully consider the affidavit of Diana Yager, which, construed in a light most favorable to Plaintiff, would support a finding of deliberate indifference by Nurses Mastee and Yonker. In her affidavit, Yager asserts that, while she was in the medical department, she overheard a conversation between Nurses Mastee and Yonker. According to Yager, "[t]hey talked about how Vernard had been sending medical kites complaining of abdominal pain, and how Vernard thought that he might have cancer. Both Younkers [sic] and Nurse Nancy [Mastee] agreed that he was faking it, and lying, and looking for attention and an easier way at the jail." Yager maintains that this conversation took place sometime between November 19, 2004, and December 28, 2004, before Yager was relocated to a different facility.

This affidavit, construed in a light most favorable to Plaintiff, shows that Nurses Mastee and Yonker received kites from Jones indicating that he was suffering from abdominal pain and that he suspected he had cancer.  They chose to ignore these requests, concluding instead that he was "faking it."  The affidavit further indicates that they received these medical kites by December 28, 2004, at the latest, yet failed to respond to these kites or call Jones down to the jail's medical facilities for a consultation or examination until March of 2005, three months later.  Contrary to the district court's decision, this evidence is sufficient to raise a genuine issue of material fact regarding whether Nurses Mastee and Yonkers knew of the risk to Jones's health, yet consciously disregarded this risk.  Although it is undisputed that Jones was eventually called down to the medical department and was examined by Dr. Deitrick, this evidence is insufficient to insulate these two nurses from liability. Their extended delay is sufficient to establish a factual issue regarding this claim.  *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004) ("When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutionality infirmity.").  Accordingly, the court concludes that the district court erred in granting summary judgment in favor of Nurses Mastee and Yonker on the Section 1983 claims.  The decision of the district court is reversed.  However, since Yagers affidavit does not implicate Nurse Malenko, this court hereby affirms the decision of the district court on Plaintiff's § 1983 claims against her.

### 3. Defendant Jail Doctor, Dr. Deitrick

Plaintiff claims that Dr. Deitrick was deliberately indifferent to Jones's serious medical needs during two periods: first, from March 29, 2005, when he first treated Jones, until April 8, 2005, when Jones was transferred to Hackley Hospital; and second, from April 20, 2005 until May 5, 2005, when Jones was returned to the jail.  Plaintiff's claim during the first period is that Dr. Deitrick treated Jones for constipation and ordered routine tests despite the obvious severity of his condition.  Similar to the analysis of Defendant Nurses, the district court stated that the notion that "Dr. Deitrick's

assessment of Jones' medical condition was inadequate or incorrect is insufficient to establish a constitutional claim of deliberate indifference." *Jones*, 2009 U.S. Dist. LEXIS 68136, at *26. Instead, the district court determined that Dr. Deitrick did offer Jones medical attention and that despite the fact that it may have been inadequate, it was not so "woefully inadequate as to amount to no treatment at all." *Id.* at *27 (quoting *Westlake v. Lucas*, 937 F.2d 857, 860 n. 5 (6th Cir. 1976).

The district court correctly asserted that courts are generally reluctant to second guess the medical judgment of prison medical officials. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (citation omitted). However, the Sixth Circuit has also recognized that

> [P]rison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment. Indeed, deliberate indifference may be established in cases where it can be shown that a defendant rendered "grossly inadequate care" or made a "decision to take an easier but less efficacious course of treatment."

*McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)). Generally, courts find deliberate indifference where there is evidence tending to establish that the physician is present while the inmate is in distress, that distress is communicated to the physician, and the physician purposefully ignores the distress knowing that an adverse outcome is likely to occur. *See*, *e.g.*, *Gibson v. Moskowitz*, 523 F.3d 657 (6th Cir. 2008) (upholding the jury's finding of deliberate indifference where the psychiatrist knew that Plaintiff's medication would elevate his temperature, knew the room he was in was ninety-plus degrees and did nothing about it, causing inmate to die of dehydration); *McCarthy*, 313 F. App'x at 815 (reversing the district court's judgment in favor of the defendant-dentist and finding an issue of fact with regard to deliberate indifference where the prison's dentist saw the inmate who expressed significant pain due to a cavity and treated him only with ibuprofen for seven months instead of filling the tooth as he had performed for other inmates).

In this case, Dr. Deitrick first examined Jones on March 29, 2005. By that time, he had lost nearly fifty pounds, complained of sharp stomach pain, noted that he had been "having small loose stools," and stated that he had not had a bowel movement in two days. In his medical chart, Dr. Deitrick stated "I think this is obstipation [severe constipation] -- not completely resolved -- will give Dulcolax [a laxative]." He also noted that he encouraged Jones to drink plenty of water. On April 5, 2005, one week later, Dr. Deitrick met with Jones who continued to complain of sharp stomach pains, stated that he had stopped taking the medication "because they didn't work," and had lost another nine pounds from the previous week. Dr. Deitrick then scheduled a series of tests, which included a liver and kidney profile and CT scan for the following day. Several days later, when Jones's condition became dramatically worse, he was transferred to Hackley Hospital. Upon Jones's discharge from Hackley, Dr. Deitrick was merely tasked with providing pre-determined medications. Dr. Deitrick saw Jones on April 26, 2005 during his next regular round, instructed the nursing staff on administering Jones's medication and told them that all other issues were to be treated by Dr. Veronica Petty, Jones's general surgeon. On May 3, Dr. Deitrick noted in the medical chart concerns about the ability of the jail to properly treat Jones in his dying days.

Dr. Deitrick's initial diagnosis and treatment of Jones with a laxative seems inappropriate in light of Jones's substantial weight loss and sharp stomach pain; however, Jones had indicated an inability to have a bowel movement for several days and other stomach pains, which could have been consistent with Dr. Deitrick's diagnosis of obstipation. Even though Dr. Deitrick's initial diagnosis was incorrect, "[n]egligence in diagnosing a medical condition does not constitute unconstitutional deliberate indifference." *Bertl v. City of Westland*, No. 07-2547, 2009 U.S. App. LEXIS 2086, at * 14 (6th Cir. Feb. 2, 2009) (quoting *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995)). Furthermore, the record shows that, after his initial visit with Jones, Dr. Deitrick scheduled various exams to determine more precisely what was affecting Jones and transferred him to the hospital when it was apparent that his condition was worsening. A reasonable jury would not conclude that Dr. Deitrick's conduct in this regard

amounted to "grossly inadequate care." *See McCarthy*, 313 F.App'x at 814. After Jones was transferred to the hospital, there is no evidence that Dr. Deitrick was requested to provide or made aware of the need to provide any specific treatment beyond what he was instructed to administer pursuant to Hackley Hospital's discharge form. Consequently, we affirm the district court's judgment in favor of Dr. Deitrick.

### 4. *Defendant County*

Plaintiff asserts that the County is liable for the deliberate indifference of its employees with respect to Jones's serious medical needs. Counties may not be held vicariously liable under 42 U.S.C. § 1983 for the actions of their employees or agents. *Monell v. New York City Dep't. of Social Servs.*, 436 U.S. 658, 694 (1978). However, counties may be held directly liable for a constitutional violation committed through a county policy or practice. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). Liability may be imposed on a county only when a county "policy" or "custom" caused the plaintiff's injury and a "direct causal link" existed between the policy and the purported denial of the right to adequate medical care. *See Ford v. County of Traverse*, 535 F.3d 483, 495-97 (6th Cir. 2008); (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997)). In this case, where no formal policy exists, the critical question is whether there is a particular custom or practice that "'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *McClendon v. City of Detroit*, 255 F. App'x. 980, 982 (6th Cir. 2007) (quoting *Prapotnik*, 485 U.S. at 127 (citation and quotation marks omitted)).

Plaintiff maintains that the Muskegon County Jail had an established custom in which the jail employees ignored the serious medical needs of jail inmates. Plaintiff maintains that the following evidence demonstrates this custom: (1) the lack of attention to Jones's medical condition by jail personnel; (2) statements by Defendant Nurse Yonker to the effect that inmates are "not supposed to feel good"; and (3) examples of four other inmates at the jail whose various medical needs were ignored. The four other inmates include Ring, who contends that between May and June of 2005, his repeated

requests for medical attention for a kidney stone were ignored; Yager, who claims that between January and March of 2000 the nurse refused to examine her leg, which was later determined to be broken; Lawson, who contends that medical kites regarding a back injury were ignored between September and November of 2008; and James Jameson, who according to the statement of Ring, was left on his cell floor for hours while having a seizure.

This evidence that Plaintiff relies on, however, does not demonstrate that the County Jail had a custom that was "so widespread, permanent, and well settled as to have the force of law." *Kinzer v. City of W. Carrollton*, No. 3:07-cv-111, 2008 U.S. Dist. LEXIS 61203, at *14 (S.D. Ohio Aug. 5, 2008). Although Plaintiff did present evidence that several inmates' medical requests were ignored by jail personnel, including Jones's, a jury could not reasonably infer from these five incidents alone that the County had a widespread, permanent, and well-settled custom of ignoring inmate requests. *See Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding that the eleven incidents of warrantless searches were not enough to support a claim for a pattern of illegality in "one of the nation's largest cities and police forces" as the same size of alleged constitutional violations was too small). Furthermore, Nurse Yonker's statement that inmates are "not supposed to feel good" does not demonstrate any purported custom by the County Jail, only an unfortunate statement by one prison employee. Because Plaintiff failed to establish a custom of deliberate indifference to the serious medical needs of inmates at the Muskegon County Jail, the court affirms the district court's grant of summary judgment in the County's favor.

###    B.    Count II -- Gross Negligence

The district court granted summary judgment in favor of Defendants on Plaintiff's gross negligence claim and stated the following: "[f]or the same reasons discussed above with respect to plaintiffs' §1983 claims of deliberate indifference, plaintiffs' claims fail under Michigan law since there is no triable issue regarding whether defendants were grossly negligent or reckless in their treatment of Jones' medical needs." *Jones*, 2009 U.S. Dist. LEXIS 68136, at *35.

The Sixth Circuit, however, has determined that the standard for deliberate indifference and the standard for gross negligence are different. This court, in *Schack v. City of Taylor*, 177 F. App'x 469, 471 (6th Cir. 2006), stated "[d]eliberate indifference is akin to criminal recklessness." This court further stated that "[i]t is a very high standard of culpability, exceeding gross negligence." *Ross v. Duggan*, 402 F.3d 575, 590 n. 7 (6th Cir. 2004) (quotation omitted). Michigan Comp. Laws § 691.1407(2)(c) defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

The district court did not sufficiently distinguish deliberate indifference from gross negligence and did not recognize that deliberate indifference is a more stringent standard. Applying the appropriate gross negligence standard to the instant case, we conclude that only Plaintiff's claims against Nurses Mastee and Yonker survive. As discussed above, there is a genuine issue of material fact regarding whether these nurses acted with deliberate indifference. However, there is no analogous evidence pointing to liability on Nurse Malenko's behalf. In regard to Nurses Mastee and Yonker, because the deliberate indifference standard is higher than the standard for gross negligence, there is a genuine issue of material fact regarding whether this lower standard has also been met by the same evidence.

With regard to the Corrections Officers, however, Plaintiff failed to point to any specific guard's wrongful conduct as discussed above; and consequently, there has been no factual showing indicating that any individual officer was grossly negligent. Therefore, summary judgment was properly granted in favor of the Corrections Officers on this state claim.

Lastly, with regard to the County, Michigan's Governmental Tort Liability Act provides that a governmental agency, such as a county, is immune from liability where it is "engaged in the exercise or discharge of a governmental function." Mich. Comp. Laws § 691.1407(1). Plaintiff has not pointed to any conduct by the County in which it acted beyond its governmental function and has not argued that any exception to the

County's immunity applies.  Accordingly, this court affirms the district court's grant of summary judgment in the County's favor on Plaintiff's gross negligence claim.

### C.       Count III -- Intentional Infliction of Emotional Distress

The district court also granted summary judgment in favor of the Nurses, the County, and the Corrections Officers on Plaintiff's claim for intentional infliction of emotional distress.  This claim requires a plaintiff to show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Vredevelt v. GEO Group, Inc.*, 145 F. App'x 122, 135 (6th Cir. 2005).  Such conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 604 N.W. 2d 713, 716 (Mich. Ct. App. 1999). The court in *Graham* further explained this conduct as follows:

> It is not enough that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Roberts v. Auto-Owners Ins. Co.,* 422 Mich. 594, 602-603; 374 N.W.2d 905 (1985)*,* quoting Restatement Torts*,* 2d, § 46, comment d, pp 72-73.  In reviewing a claim of intentional infliction of emotional distress, we must determine whether the defendant's conduct is sufficiently unreasonable as to be regarded as extreme and outrageous. *Doe, supra* at 92*,* 536 N.W.2nd 824. The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, *supra* at 603, 374 N.W.2d 905.

*Id.*

According to the district court, there may have been deficiencies in the medical care provided, but Defendants' conduct did not rise to the level of extreme and outrageous conduct, which demands more than mere neglect or deficiency. This court agrees. For the reasons articulated above, Plaintiff has failed to demonstrate such a high level of wrongful conduct with regard to Jones's medical care on the part of the Corrections Officers, Nurse Malenko, or the County.

We also conclude that the purported wrongful conduct of Nurses Mastee and Yonker, even if established, does not rise to the level of extreme and outrageous conduct necessary to support this claim. Plaintiff presented an affidavit indicating that these two nurses received medical kites from Jones that claimed he was seriously ill, and that these nurses subsequently ignored those kites for several months, concluding instead that Jones was faking it. Although this conduct could reasonably be construed as deliberately indifferent to Jones's serious medical needs, it does not establish that they acted intentionally or in a manner that is sufficiently extreme or outrageous to satisfy this claim. The recitation of these facts alone would not arouse the resentment of a reasonable juror against these nurses such that he would exclaim, "outrageous!" *See Graham*, 604 N.W. 2d at 716. Therefore, we conclude that the district court's decision to grant summary judgment in favor of all Defendants on this state-law claim was proper.

### IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment in favor of Defendants-Appellees Corrections Officers, Nurse Malenko, Dr. Deitrick, and the County, but **REVERSE** the order granting summary judgment in favor of Defendants-Appellees Nurses Mastee and Yonker on Plaintiff's 42 U.S.C. § 1983 and gross negligence claims. We **AFFIRM** the district court's order granting summary judgment in favor of all Defendants-Appellees on Plaintiff-Appellant's state-law claims for intentional infliction of emotional distress. Finally, we **REMAND** the case for further proceedings consistent with this opinion.