COLE, Circuit Judge,
dissenting.
I agree with the majority that Cobbs has shown that he suffered from a serious medical need. However, I believe the district court was correct in concluding that the record establishes that Pramstaller acted with deliberate indifference to that need. Therefore, I respectfully dissent.
There is no dispute that Pramstaller appreciated the significance of having, in effect, a non-functional eye. In his deposition, Pramstaller was presented with a variety of hypothetical scenarios involving an individual with a cataract in one eye. In several places, Pramstaller stated that the proper medical decision was to perform the surgery. For example, Pramstaller was asked whether the fact that Cobbs had one functioning “good eye” after his original surgery would remove the need for surgery on the bad eye. Pramstaller answered:
Well [the vision in the good eye] does not indicate or counterindicate, but it’s one of the factors that is taken into consideration ... The other thing is you have someone who is, has 20/20 vision in the first cataract eye, but the second cataract eye is 20/400, and you can’t see a thing out of that eye, the disparity in the visual cortex makes it difficult, so we would probably do the cataract, also.
(Dep. of Pramstaller, Dist. Ct. Docket No. 106-10, at 57:19-58:5.) The majority notes correctly that poor visual acuity must be combined with collateral consequences, such as glare, from the deficit in order to trigger the need for surgery. In addition, Pramstaller does say that the 20/400 reading would not immediately trigger surgery if there was the possibility that the glare was caused by artificial lenses. (Dep. of Pramstaller, Dist. Ct. Docket No. 106-10, at 64:8-15.) Taken together, Pramstaller’s testimony is that a patient with (1) vision in the bad eye of 20/400 or worse; and (2) suffering from collateral consequences such as glare; occurring (8) whether or not artificial lenses were worn, could expect to have surgery on the bad eye.
As of October 2004, the time of the first denial, Cobbs’s vision in his left eye was 20/400 with glare, and as of November 2005 his vision in the left eye was 20/600. (Medical Records, Dist. Ct. Docket No. 106-5, at 12-13; McGrath Dep., Dist. Ct. Docket No. 106-8, at 49:9-14.) It is undisputed that Cobbs had the qualifying collateral consequences, such as glare caused by the cataract, in addition to the poor acuity during this time period. (See Dep. of Pramstaller, Dist. Ct. Docket No. 106-10, at 56:7-23.) Furthermore, the medical records from 2005 and 2006 make clear that Cobbs’s vision problems were independent of the presence of artificial lenses. (Medical Records, Dist. Ct. Docket No. 106-5, at 34, 36.) Thus, as of the second denial of surgery in 2006, Pramstaller (1) had medical records in front of him that stated that Cobbs’s vision in his left eye was worse than 20/400, with glare, even without artificial lenses; (2) recognized (at least as of his deposition) that this should have triggered an approval of the surgery; and yet (3) denied the surgery request. This meets all three of the elements of the deliberate indifference established in our case law. See, e.g., Jones v. Muskegon Cnty., 625 F.3d 935, 941 (6th Cir.2010)
In that light, I cannot agree with the majority that the decision not to order surgery in 2006 represents “considered medical judgment.” (Maj. Op. at 583.) I see no way to square Pramstaller’s testimony, describing the appropriate course of treatment for a patient in Cobbs’s circumstances, with the treatment Pramstaller actually ordered for Cobbs. Thus, under *585 the standards articulated by Pramstaller himself, there was no legitimate reason not to order the surgery for Cobbs after April 2006. That Pramstaller did not do so constitutes deliberate indifference.
The majority notes that Pramstaller did order ophthalmological monitoring of Cobbs for potential glaucoma during this period. This is beside the point. Glaucoma and cataracts are two unrelated eyes diseases, and Cobbs’s claim is for deliberate indifference toward his cataracts. The only reason the two were linked in Cobbs’s case is that Cobbs’s cataracts made it impossible to conduct the normal glaucoma examinations. Conceding that Pramstaller acted properly in ordering the extra examinations for glaucoma, proper care for one condition does not excuse improper care for another, unrelated condition.
For the above reasons, I would affirm the judgment of the district court and allow Cobbs’s case to proceed to trial on the merits.