NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0582n.06

No. 18-1149

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOSEPH GALE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CORRIGAN O'DONOHUE, et al., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

FILED
Nov 21, 2018
DEBORAH S. HUNT, Clerk

**BEFORE: GUY, WHITE, and STRANCH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**

Joseph Gale appeals the district court's denial of his motion to preliminarily enjoin practices and policies of the Royal Oak Police Department that Gale alleges are unconstitutional. The district court did not err in finding that Gale failed to demonstrate either a likelihood of success on the merits of his claim for municipal liability or a danger of irreparable harm absent the injunction. We therefore AFFIRM.

## I. BACKGROUND

At approximately 2:27 AM on September 4, 2016, a resident of 1409 Wyandotte Street in Royal Oak, Michigan, placed a 911 call complaining of a "strange man" who had knocked on her door five minutes earlier. (R. 22, Ex. D.) When the caller's husband opened the door, the man who had knocked stated that the police were on site—they were not—before asking if the residents of the house needed any help and then abruptly leaving. The 911 caller said that the man's

comments confused her and her husband. The caller described the man, told the police the direction in which he had been walking, and asked the police to investigate. The caller stated that the man did not appear to be intoxicated.

At approximately 2:37 AM, Officer Klinge observed Gale within one quarter of a mile of 1409 Wyandotte. Gale's appearance was consistent with the description given by the 911 caller. When Klinge exited his vehicle and approached Gale, Gale put his hands in the air.[1] Officers Heppner and Paramo arrived on the scene approximately 45 seconds later, and Gale's interactions with the officers are captured on both audio and video recordings from that point onward.

When asked where he was going, Gale told the officers that he was attempting to go to his friend's house. Although the officers asked Gale the location of the house a number of times over the course of the encounter, Gale was unable to provide a coherent explanation of its location. Paramo asked Gale if he had any identification, adding: "Do you mind if we check?" (R. 22, Exs. B, C.) Gale, who still had his hands raised in the air, responded: "Absolutely." (R. 22, Exs. B, C.) Paramo reached into Gale's back pocket, retrieved his driver's license, and contacted police dispatch to check the license number.

While dispatch was running the check, Paramo explained that the police had received a call that a person matching Gale's description had been knocking on doors in the area. Paramo asked whether Gale knew where he was, and Gale responded that he did not know his location, but that he had "not been knocking on anyone's doors." (R. 22, Exs. B, C.) Heppner then asked Gale how much he had had to drink and Gale responded that he was unsure. The officers asked Gale whether

---

[1] Officer Klinge's audio recorder appears to have been malfunctioning, so the record contains no audio recording of Gale's interactions with Klinge prior to the arrival of the other officers. When one of the officers later told Gale to put his hands down, he responded by saying that that he had been told to take his hands out of his pockets, suggesting that Klinge ordered Gale to take his hands out of his pockets and that, in response, Gale put his hands in the air.

he had seen anyone else on the street while he was walking and when Gale responded that he had not, Heppner stated that none of the officers had seen anyone else on the street, either.

After Gale failed to provide a coherent explanation of where he was attempting to go—in part because he had told the officers he was going to the intersection of two streets that do not intersect—the officers offered to call Gale a taxi because they did not want him "walking around the street intoxicated." (R. 22, Exs. B, C; *see also* R. 18 Exs. H, I, PID 378-81.) The officers asked Gale where he would tell the taxi to take him, and Gale responded that his friend's house was "right next to" "Third on the Rock, the bar"; Gale did not recall his friend's specific address.[2] (R. 22, Exs. B, C.)

Paramo continued to ask Gale whether he had knocked on any doors, and Gale maintained that he had not. Paramo offered to drive Gale to his destination, and Gale stated that he would "appreciate it" if the officers would "take [him] downtown." (R. 22, Exs. B, C.) Paramo explained that he had to pat Gale down before entering the vehicle, and Gale responded by asking whether he was under arrest; Paramo explained that he was not under arrest, that Gale was "free to go walk on [his] own," and that he was "just doing [Gale] a favor." (R. 22, Exs. B, C.) Paramo patted Gale down, and Gale then entered the rear seat of Paramo's police vehicle.

At this point, Heppner suggested that the officers might be able to locate Gale's friend's address in a police database, but Gale refused to provide his friend's full name.[3] When Gale asked whether he was free to leave the vehicle, Paramo responded: "Yeah, you're good. I'm just trying to get your buddy's name so that I can take you to your buddy's instead of me taking you to Rock on Third." (R. 22, Exs. B, C.) Gale stated: "if you could just get me to the Rock on Third, that'd

---

[2] Gale appears to have been referring to "The Rock on Third," a bar in Royal Oak a 21-minute walk from the location of the stop. (*See* R. 18, Ex. J, PID 383.)

[3] The database at issue contained, among other things, the names and addresses of individuals who had had interactions with the police.

be great." (R. 22, Exs. B, C.) Paramo again asked for Gale's friend's name, but Gale again did not provide it.

When Paramo continued to ask for Gale's friend's name, Gale said that if the officer would not take him to the Rock on Third, he would get out; Paramo responded by telling Gale that he was not under arrest and was not in trouble and that Paramo was "trying to get [Gale] out of here so no one else calls on [him]." (R. 22, Ex. C.) Paramo then explained that there had been "a ton of [breaking and entering]" calls in the neighborhood and, although it was "obviously" not Gale, "if [the officers] leave [Gale] out here to walk, someone is going to call on you again—I'm trying to avoid that for you." (R. 22, Ex. C.) Paramo then raised his voice and again asked for Gale's friend's last name, explaining that he needed it to look up the address. When Gale attempted to clarify why Paramo was requesting the full name, Paramo said "listen to me dude," "I'm trying to help you." (R. 22, Ex. C.) Gale responded that he would "just walk," but Paramo did not respond and began driving the vehicle. (R. 22, Ex. C.) Gale again asked whether he was free to leave or under arrest; Paramo responded by shouting: "what did I tell you the first time, dude, I said you're not under arrest; what don't you understand about that?" (R. 22, Ex. C.) Gale responded that he wanted to exit the vehicle, and Paramo responded: "I'm getting you out of here. You wanted to go to Rock on Third, I'm taking you to Rock on Third." (R. 22, Ex. C.) The drive lasted approximately two minutes; Gale repeatedly requested to leave the vehicle, but Paramo responded that he would not drop him off until they reached the Rock on Third. Paramo then pulled into a gas station near the Rock on Third and allowed Gale to exit. From start to finish, Gale's interactions with the police lasted eleven minutes and twenty-seven seconds, approximately five minutes of which took place in Paramo's police vehicle.

**A. Gale Files a Citizen's Complaint**

On October 5, 2016, Gale filed a Citizen's Complaint with the City of Royal Oak Police Department. The department initiated an investigation that included a review of footage from the responding officers' vehicles, and Lt. David Van Ness met with Gale on October 17, 2016. Van Ness and Gale agreed to record the audio of their meeting.

Van Ness and Gale discussed Gale's complaint over the course of more than two hours. Van Ness explained the department's policy for responding to and investigating 911 calls and told Gale that the officers were justified in stopping and questioning him. Van Ness explained that there had recently been several nighttime home invasions in the area and that the police often encountered intoxicated civilians in the area, and that, as a result, the officers had reasonable suspicion to stop and investigate Gale based on a combination of (a) the 911 call, (b) the officers' observation that Gale matched the 911 caller's description and was walking alone on a nearby street, and (c) the fact that Gale did not provide a coherent explanation for his presence. Van Ness further explained that the officers were also motivated by concern for the safety of civilians who might be lost or intoxicated. In short, Van Ness told Gale that the officers had acted in accordance with police procedure and stood by the officers' conduct.

**B. The Instant Action**

On July 5, 2017, Gale filed a "Verified Class Action Complaint" naming Klinge, Paramo, and Heppner in their individual capacities and Royal Oak Police Chief Corrigan O'Donohue in both his individual and official capacities. (R. 1, PID 1.) Gale filed an amended complaint on July 31, 2017, advancing nine separate claims: (1) search and seizure in violation of 42 U.S.C. § 1983 against all individual defendants, (2) deprivation of property in violation of § 1983 against all individual defendants, (3) "abuse of process and conspiracy" in violation of § 1983 against all

individual defendants; (4) *Monell* liability under § 1983 against O'Donohue in his official capacity; (5) false imprisonment or false arrest against all individual defendants; (6) conspiracy to commit false imprisonment or false arrest against Paramo and Heppner; (7) assault and battery against all individual defendants; (8) common law trespass against all individual defendants; and (9) violation of Michigan's Freedom of Information Act against O'Donohue in his official capacity.

Gale moved for a temporary restraining order against O'Donohue in his official capacity on July 10, 2017. Gale asked the court to "restrain Defendant's policy to stop or frisk individuals within the City of Royal Oak for their identification, in order to run warrant checks, without any reasonable suspicion of criminal activity being afoot, until such time as the Court can further consider the merits." (R. 6, PID 86.) The court denied the motion, finding that Gale "has not shown that he will suffer immediate and irreparable harm *before* Defendants can be heard" and has "failed to certify . . . whether any efforts have been made to give notice to Defendants." (R. 7, PID 120.)

### C. Motion for Preliminary Injunction

On August 2, 2017, Gale moved for a preliminary injunction. In particular, Gale sought an order (a) enjoining the Royal Oak police department from continuing its alleged policy, practice, or custom of conducting suspicionless stops; (b) requiring defendants to maintain a database of information concerning all stops conducted by Royal Oak police officers; and (c) requiring defendants to monitor the police department's stop-and-frisk practice on an ongoing basis.

The district court denied Gale's motion. The district court first noted that Gale's municipal liability claim was "his only claim that plausibly seeks prospective relief" and therefore considered only whether Gale had met the requirements for a preliminary injunction with respect to that claim.

(R. 31, PID 604, 608–09.)  The district court ultimately found that Gale had failed to demonstrate either a likelihood of success on the merits or a danger of irreparable harm.

The district court first found that Gale had failed to demonstrate a likelihood of success on the merits because he "cannot show that he is substantially likely to establish the existence of a[n] unconstitutional policy or custom."  (R. 31, PID 610.)  Recognizing that Gale "has provided no evidence that a Royal Oak city ordinance or police department official policy promulgated an unconstitutional stop and frisk regime," the court stated that Gale must demonstrate the existence of "a particular custom or practice that although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." (*Id.* (quoting *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010)).)  The district court concluded that Gale's allegation that he was subject to an unconstitutional stop was "insufficient to demonstrate a custom that is 'so widespread, permanent, and well settled as to have the force of law.'" (*Id.* (quoting *Jones*, 625 F.3d at 946).)  Regarding Van Ness's recorded statements, relied on by Gale in support of his position that defendants have an unconstitutional policy, the district court stated that Gale had "pluck[ed] isolated, out-of-context statements from a two-hour meeting," and that, "[c]onsidered in context, Van Ness's statements described innocuous, routine police work: responding to calls, investigating suspicious activity, managing intoxicated individuals, and identifying persons stopped by police."  (*Id.* at PID 611.)  The court further concluded that Gale "has not shown that any of [Police Chief] O'Donohue's actions demonstrate that an unconstitutional municipal policy or custom exists."  (*Id.*)

The court next considered Gale's argument that Royal Oak provides inadequate training and supervision to its officers and concluded that, at "a minimum, [Gale's] claim fails because he cannot show deliberate indifference."  (*Id.* at PID 611–12.)  The court noted that Gale "has not

alleged, or provided evidence of, a history of abuse that would place Royal Oak on notice that its training of police officers was deficient," and "mere allegations that an individual officer was unsatisfactorily trained are insufficient." (*Id.* at PID 612.)

Finally, the court concluded that Gale "has not alleged or provided any facts showing prior instances of similar misconduct" and, therefore, "has not shown that Royal Oak has a custom of tolerance of acquiescence of federal violations." (*Id.*)

The court also found that Gale "has not shown irreparable harm" because "he has not shown that a constitutional right has been impaired" and has not demonstrated "a sufficient likelihood that he will again be wronged in a similar way." (*Id.* (alteration omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).)

The district court therefore denied Gale's motion for a preliminary injunction. The court also found that plaintiff's request for expedited discovery in support of his claim for injunctive relief was moot.

## II. DISCUSSION

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). Courts considering a requested preliminary injunction must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Id.* at 809 (quoting *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998)). "While, as a general matter, none of these four factors are given controlling weight, a preliminary

injunction issued where there is simply no likelihood of success on the merits must be reversed." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997).

A district court's determination whether a movant "is likely to succeed on the merits is a question of law and is accordingly reviewed de novo," but "the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief is reviewed for abuse of discretion." *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007)). This is a highly deferential standard, and the "district court's determination will be disturbed only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Certified Restoration*, 511 F.3d at 542 (quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Bonnell*, 241 F.3d at 809 (quoting *United States v. United States Gypsum, Co.*, 333 U.S. 364, 395 (1948)).

Gale seeks a preliminary injunction premised on his § 1983 claim against the municipal defendant. Municipal governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978). In order to establish municipal liability, Gale must prove both the existence of a municipal policy or custom and a direct causal link between the policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "To show the

existence of a municipal policy or custom leading to the alleged violation, a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Winkler v. Madison Cty.*, 893 F.3d 877, 901 (6th Cir. 2018) (quoting *Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015)).

## A. Gale Has Not Demonstrated A Likelihood of Success on the Merits

Gale first argues that the police violated his constitutional rights because they lacked any justification for stopping him. Gale contends that "community caretaking" does not justify the police officers' interactions with him because such a stop "may only be conducted in a consensual manner, or in an emergency." (Appellant Br. at 12.) Gale next argues that the officers were not justified to stop him based on suspicion of public intoxication or a noise violation because "reasonable suspicion of a completed misdemeanor is not sufficient to justify an investigatory stop." (*Id.*) That is, Gale urges us to conclude that the officers were "investigating a completed act," not an ongoing violation. (Reply Br. at 6.)

Gale additionally argues that the alleged violation of his constitutional rights was a result of the municipal defendant's deliberate indifference. Gale relies on Van Ness's comments to argue that the municipal defendant was aware both that the officers were inadequately trained and that, as a result of their training, the officers were likely to violate the Fourth Amendment rights of civilians with whom they came into contact. In support of this position, Gale asserts that "Van Ness displayed, at the very least, a deliberate indifference to individuals' Fourth Amendment rights." (Appellant Br. at 6.) Gale argues that the district court "erroneously ruled that a pattern of violations is required to prove deliberate indifference." (*Id.* at 13.) Gale asserts that, "contrary to the district court's holding, . . . a pattern of similar violations is not the only way to prove

deliberate indifference" because "deliberate indifference may be proved by either direct evidence of indifference or circumstantial evidence where the need for training is 'obvious' and constitutional injury is the "''highly predictable' consequence' of failing to provide it." (*Id.* at 21 (quoting *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)).) Gale concludes that, "from O'Donohue down, the Royal Oak police officers wholly misunderstood the law regarding investigatory stops and subsequent frisks" and that there "can be no excuse for the failure to train police officers in such simple rules." (*Id.* at 24–25.) Gale thus argues that the evidence supports a finding of municipal liability on a failure-to-train theory.

"The Constitution forbids not all searches and seizures, but unreasonable searches and seizures." *Pennington v. Metro. Gov't of Nashville & Davidson Cty.*, 511 F.3d 647, 651 (6th Cir. 2008) (internal alterations omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). "A person is seized when 'a reasonable person would not feel free to leave an encounter with police.'" *Id.* (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 834 (6th Cir. 2005)). A court considering whether a seizure has occurred "must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991).

We assume for the sake of argument that a reasonable person in Gale's situation would not have felt free to terminate the encounter with the police, and the interaction is thus constitutional only if the officers possessed reasonable suspicion justifying the stop. *See Terry*, 392 U.S. at 27. Reasonable suspicion cannot be premised on an officer's "inchoate or unparticularized suspicion or 'hunch,'" but must consist of "specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 27.

We apply a two-part analysis to determine the constitutionality of such a stop. First, "we determine whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). When making that determination, we must "examine the totality of the circumstances in order to determine the reasonableness of the investigatory stop." *Id.* (quoting *Wardlow*, 528 U.S. at 124). Second, we must examine whether "the degree of intrusion was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Davis*, 514 F.3d 596, 608 (6th Cir. 2008) (alterations and internal quotation marks omitted).

Gale argues that defendants' inadequate training caused his alleged constitutional violation. In order to prevail under such a theory, Gale "must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Winkler*, 893 F.3d at 902 (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). Although evidence of "deliberate indifference" often takes the form of a pattern of constitutional violations stemming from inadequate training or supervision, Gale is correct that the Supreme Court has recognized that a finding of deliberate indifference need not always be premised on such a pattern. *See Canton*, 489 U.S. at 390.

Gale argues that Van Ness's descriptions of the Royal Oak Police Department's training and supervisory practices establish that defendants were deliberately indifferent to the constitutional rights of civilians. Gale relies primarily on Van Ness's decision to support the police

practices as they currently stand and argues that Van Ness conceded that adherence to current practices would "guarantee" repeated constitutional injuries.

We agree, for the sake of argument, that Van Ness's statements are indicative of the Royal Oak Police Department's practices. However, Van Ness did not describe an unconstitutional failure to train. Instead—as the district court correctly noted—Van Ness "described innocuous, routine police work: responding to calls, investigating suspicious activity, managing intoxicated individuals, and identifying persons stopped by police," and did not describe a "widespread, permanent, and well-settled custom in the Royal Oak Police Department of violating the Fourth Amendment." (R. 31, PID 611.) Van Ness said nothing suggesting that the department improperly trained its officers on the law governing street stops. Instead, Van Ness's comments focus on the types of calls and observations that may constitute reasonable suspicion for officers to conduct investigatory stops.

Gale has thus failed to demonstrate that defendants provided inadequate training, that defendants were deliberately indifferent to civilians' constitutional rights, or that there was a causal connection between any training and his alleged injury. Gale therefore has not demonstrated a likelihood of success on the merits of his claim against the municipal defendant, and we would be justified in affirming the district court's order on this ground alone. *See Mich. State AFL–CIO*, 103 F.3d at 1249 ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

### B. Gale Has Not Demonstrated Irreparable Harm

Gale's argument for irreparable harm relies on our statements in *Bonnell* that, "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." (Appellant Br. at 27 (quoting *Bonnell*, 241 F.3d at 809).) Based on his allegations

that his Fourth Amendment rights had been violated pursuant to a municipal policy and that the defendants were deliberately indifferent to such violations, Gale argues that "there can be no 'mistaking that the defendants proposed to continue their unconstitutional polices'" in the absence of a preliminary injunction. (Appellant Br. at 28 (quoting *Rizzo v. Goode*, 423 U.S. 362, 374 (1976)).) Defendants respond that Gale cannot demonstrate a danger of irreparable harm because "he is seeking redress for *past injury* . . . not harm that is likely to occur in the future." (Appellee Br. at 35.)

In *Bonnell*, we recognized that "the Supreme Court held that when reviewing a motion for a preliminary injunction, if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Bonnell*, 241 F.3d at 809 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). But, *Bonnell*'s language is forward-looking; the fact that a plaintiff has alleged a past constitutional injury does not mean that his "constitutional right is being threatened or impaired." Gale has not demonstrated that any unconstitutional policy caused his alleged injury and provides no evidence suggesting that he will be subject to the allegedly unconstitutional conduct again. He has therefore failed to demonstrate a danger of irreparable harm absent the injunction.

### C. Gale Has Not Demonstrated That the Balance of the Equities is in His Favor

Gale argues that "the balance of equities and public interest always favors 'preventing the violation of a party's constitutional rights'" and that "these factors clearly tip in" his favor. (Reply Br. at 13 (quoting *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)).) Defendants argue that Gale "seeks to prohibit the Royal Oak Police from performing investigatory stops based on reasonable suspicion and running warrant checks during those stops" and that this "poses a substantial harm to the safety and welfare of the general public." (Appellee

Br. at 36.) Defendants thus argue that the proposed injunction "would pose a threat to public safety and welfare." (Appellee Br. at 36.)

The district court found that Gale had failed to satisfy the first and second prongs of the preliminary injunction inquiry and did not address the equitable factors. But those factors do not cut in Gale's favor: without any evidence of an unconstitutional policy, he asks the court to enjoin a wide swath of police activity in Royal Oak. Even assuming that Gale's requested injunction is practicable, the imposition of such an injunction would dramatically disrupt—rather than preserve—the status quo by hampering defendants' ability to respond to and investigate complaints, resulting in tremendous hardship to defendants and, in all likelihood, endangering civilians. Without evidence of an unconstitutional policy, we must find that the equities counsel against Gale's requested injunction.

### III.  CONCLUSION

Because Gale has not demonstrated a likelihood of success on the merits and the district court did not abuse its discretion in weighing the preliminary injunction factors, the district court's denial of Gale's requested preliminary injunction is **AFFIRMED**.