NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0811n.06
Filed: November 21, 2007

No. 05-2734

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BONITA McCLENDON and ELLIOTT McCLENDON, a minor, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| CITY OF DETROIT, a Michigan municipality, | ) ) | EASTERN DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) ) ) | OPINION |

**Before: DAUGHTREY, GILMAN, and COOK, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Bonita McClendon and her teenage son Elliott sued the City of Detroit under 42 U.S.C. § 1983 following the warrantless entry into and search of their house by Detroit Police Officers Linda Gilbert and Herman Hope. Gilbert and Hope were searching for Gilbert's teenage daughter, Cassandra, who had run away. The district court granted summary judgment in favor of the City. On appeal, the McClendons argue that the City should be held liable for the officers' conduct because the City has an unconstitutional custom or policy of permitting warrantless searches. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

## A.     Factual background

Officers Gilbert and Hope arrived at the McClendons' home at approximately 4:00 a.m. on June 8, 2002. Gilbert's teenage daughter Cassandra, who was dating Bonita McClendon's other son Everett, had run away from home, and Gilbert believed that Cassandra was with Everett. The officers, who were in uniform and on duty, entered the McClendons' home through a closed but unlocked side door. They did not have a search warrant.

Gilbert and Hope woke up Elliott McClendon and asked him about the whereabouts of both his mother and Cassandra. Elliott told the officers that his mother was upstairs and that he did not know where Cassandra was. Gilbert instructed Elliott to wake up his mother. Elliott complied, and then returned to his bedroom. After being awakened by Elliott, Bonita McClendon met Gilbert and Hope downstairs and told the officers that Cassandra was not at the house and that she had no idea where Cassandra could be found. When the officers asked for permission to search the basement of the house, Bonita consented "under duress." Cassandra was not found at the McClendons' home (nor was Everett), and the officers left without any further explanation.

Later that day, Bonita McClendon called the police to report the incident. Officer Cheri Snow and her partner, Officer Antonio Trupiano, responded to the report of a breaking and entering at the McClendons' home. Bonita McClendon informed them that Gilbert and Hope had entered her house early that morning to search for Cassandra Gilbert. Officer Snow took the complaint from Bonita.

Based on the entry and search of the McClendons' home, the Wayne County Prosecutor charged both officers with the criminal offense of "entering without owner's permission." The

officers were acquitted on November 4, 2002 following a bench trial in the state district court.

Detroit Police Internal Affairs also investigated the incident and determined that the officers had

violated department policy. Gilbert and Hope were both suspended for six months without pay.

**B.      Procedural background**

Based on the foregoing facts, the McClendons subsequently filed lawsuits in both state and

federal court. The state-court case was ultimately settled in May of 2005. In November of 2005,

summary judgment was granted in favor of all the defendants in the federal action. This timely

appeal followed. The McClendons challenge only the grant of summary judgment in favor of the

City.

## II.  ANALYSIS

**A.      Standard of review**

We review de novo the district court's grant of summary judgment. *Int'l Union v. Cummins*,

434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material

fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In considering a motion for summary judgment, the district court must construe all reasonable

inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

**B.      The City's liability under § 1983**

The McClendons argue that the City can be held liable under § 1983 on the basis of (1) an unconstitutional custom or policy of allowing warrantless searches, (2) inadequate training of its police officers, and (3) ratification of Gilbert's and Hope's conduct. Because *respondeat superior* liability is not available as a means of recovery under § 1983, *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996), the McClendons cannot base their claims against the City solely on the conduct of Officers Gilbert and Hope. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"). The plaintiffs must demonstrate that the City itself was a wrongdoer. *Id.*

Municipalities and other bodies of local government may be sued pursuant to 42 U.S.C. § 1983 if they are "alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988) (quoting *Monell*, 436 U.S. at 690). Section 1983 also "authorizes suit 'for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.'" *Id*. (quoting *Monell*, 436 U.S. at 690-91). A § 1983 plaintiff might not be able to demonstrate that a written policy exists, but he or she "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 127. (citation and quotation marks omitted). Such a plaintiff "must also show a direct causal link between

the custom and the constitutional deprivation." *Doe*, 103 F.3d at 508. "This requirement is necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*." *Id.*

## C.      Claims of the McClendons

The McClendons first argue that "[t]he trial court erred where the Defendant City of Detroit had a policy, custom and practice of exercising warrantless entries under exigent circumstances through its police Department." This bald assertion, however, amounts to nothing more than setting forth one of the hallmark exceptions to the Fourth Amendment warrant requirement. The exigent-circumstances exception allows the government to "overcome the presumption that a warrantless entry is unreasonable if it proves that 'the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.'" *United States v. Huffman*, 461 F.3d 777, 782 (6th Cir. 2006) (quoting *Brigham City v. Stuart*, 126 S. Ct. 1943, 1947 (2006) (citation and quotation marks omitted)).

In their brief, the McClendons' most direct explanation of their theory of municipal liability is as follows:

> By virtue of its police power, the Defendant City of Detroit, through its police officers, is vested with statutory authority to enter the homes, such as Plaintiffs-Appellants, without a warrant. Said entry is grounded in exigent circumstances. Here, Defendant police officers believed a minor was in the Plaintiffs-Appellants home without permission to be there and that the minor may have been in some danger. Acting as police officers, vested by the Defendant City of Detroit, Defendant officers entered the premises without a warrant. The warrantless entry into Plaintiffs-Appellants home constitutes a deprivation because the officers were exercising a policy, custom, practice of Defendant City of Detroit's warrantless entry.

The McClendons appear to be arguing that even if Officer Gilbert's and Hope's warrantless entry into the McClendons' home was justified by exigent circumstances, the City could still be held liable under § 1983. In other words, the McClendons are asking us to predicate municipal liability on the basis of a policy that accords with the settled law of warrantless searches. This we decline to do.

Moreover, based on the disciplinary actions taken by the Detroit Police Department against Officers Gilbert and Hope, the City recognized that their conduct fell outside of the exigent-circumstances exception. The fact that the officers were disciplined for their unauthorized entry into the McClendons' house thus refutes any claim that the City has a custom or policy that caused the constitutional violation by the individual officers.

According to the McClendons, however, the officers' acquittal in the state-court criminal proceeding is evidence of "an established policy, custom and practice." But the state trial court apparently acquitted the officers because their behavior was found to fall within Michigan's emergency-aid exception to the warrant requirement. No conclusion was reached by the state court about the customs or policies of the City or the Detroit Police Department.

The McClendons next allude to the possibility of municipal liability for inadequate training. "[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). The present case, however, does not fall within those limited circumstances. *Harris* makes clear that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. The McClendons offer no evidence of inadequate police training on the part of the City, but

make only naked assertions that the City "lacks protocols that, if in place, safeguard against abuses of the policy, custom and practice of conducting warrantless searches." Such assertions are inadequate to support a finding of municipal liability under § 1983 because warrantless searches under proper exigent circumstances are indeed constitutional. *See Huffman*, 461 F.3d at 782.

Finally, the McClendons argue that the City ratified the actions of Gilbert and Hope because the punishment meted out to the officers amounted to "a mere slap on the hand." A six-month suspension without pay, however, can hardly be classified as a mere slap on the hand. Such action by the City precludes the McClendons from being able to show "that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997) (quoting *Harris*, 489 U.S. at 388).

We thus conclude that the McClendons have failed to meet their burden of proving that "through its *deliberate* conduct, the [City] was the 'moving force' behind the injury alleged." *Id.* at 404 (emphasis in original). To the contrary, the apparent "moving force" in the present case was the misguided individual decision of Officer Gilbert to locate her runaway teenage daughter where she suspected Cassandra could be found. The unique circumstances that motivated this unconstitutional search by the individual officers is simply not attributable to any unlawful custom or policy of the City.

## III.  CONCLUSION

For all the reasons stated above, we **AFFIRM** the judgment of the district court.