NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0475n.06

Case Nos. 21-5786/5833

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BLAKE CRETACCI, | ) | **FILED**<br>Nov 23, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant/Cross-Appellee (21-5786/5833), | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| MATTHEW HARE, et al., | ) | |
| Defendants-Appellees (21-5786), | ) | |
| | ) | |
| STEVEN AUSTIN QUALLS, | ) | |
| Defendant-Appellee/Cross-Appellant (21-5786/5833). | ) | O P I N I O N |
| | ) | |

Before: McKEAGUE, WHITE, and MURPHY, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiff Blake Cretacci appeals the district court's denial of his motion for a new trial on damages where the jury found Defendant Steven Qualls guilty of excessive force but only awarded Cretacci nominal damages. Qualls himself appeals the district court's denial of his motion for judgment as a matter of law. Cretacci additionally appeals the district court's exclusion of prior acts evidence, as well as its earlier grant of summary judgment to Coffee County. Because the jury was under no obligation to find that Cretacci proved by a preponderance of the evidence that he suffered compensable harm, he is not entitled to a new trial on damages. In addition, the district court correctly excluded the prior acts evidence and correctly granted summary judgment to Coffee County. Finally, because a reasonable jury could find that

Qualls committed excessive force, we decline to overturn the jury verdict against him. We thus affirm the district court.

I.

**A. Factual Background**

At the time of the relevant events, Plaintiff and Cross-Appellee Blake Cretacci was a pre-trial detainee residing in the Coffee County Jail. On August 18, 2018, he was involved in an incident with five prison guards—Defendants Matthew Hare, Tristan Collins, Steven Austin Qualls, Joshua Henry Thomas, and Cody Duke. On that day, the guards were in the process of moving Cretacci to a higher security cell after Cretacci's cell was found vandalized.[1]

According to Cretacci, he initially argued with the guards, claiming innocence, but complied after only a few moments. But, as he began to walk to the new cell, he was pushed, unprompted, by Defendant Hare. Cretacci alleges he did not respond other than to request not to be pushed. Next, as Cretacci's version goes, he paused at a table, unsure of which direction to go, and Defendant Hare pushed him forcefully into the table. According to Cretacci, though he was compliant and not resisting, Defendant Collins then took Cretacci to the ground via chokehold, where Defendants Thomas and Duke held Cretacci down while Defendant Qualls tased him twice. Cretacci then alleges that Defendant Hare continually pushed down on his handcuffs as they moved to the higher security cell (causing him pain), and shoved him onto the ground of the cell after he was unable to get onto his knees, where he hit his head on the floor.

According to the officers, while they were escorting Cretacci to the new cell, Defendant Hare placed his hand on Cretacci's back or shoulder, at which point Cretacci attempted (but failed) to turn around and strike Defendant Hare. The officers allege that Defendant Thomas tried to

---

[1] It was later determined that Cretacci did not damage the cell.

restrain Cretacci, but that he resisted, whereupon Defendant Qualls tased Cretacci once. Then Defendant Collins brought Cretacci down to the floor, where Defendant Duke handcuffed him. They allege that they took Cretacci to his new cell, and placed him on the ground when he refused to get on his knees himself.

After this incident, Cretacci filed a grievance with the jail, in which he requested that the surveillance video of the altercation be preserved. But he alleges that the incident was not investigated and that he was not interviewed about it. On September 15, 2018, Cretacci's counsel sent a certified letter to the Sheriff's Department requesting that the video be preserved, with non-certified copies sent to Jail Chief Deputy Frank Watkins and the County Attorney. The video was not preserved.

**B. Procedural History**

Cretacci filed this action in the Eastern District of Tennessee on August 16, 2019, alleging excessive force under the Fourteenth Amendment against the five officers. He additionally alleged that Coffee County was liable for the excessive force under several theories. The district court granted summary judgment for Coffee County, finding that Cretacci did not provide evidence sufficient to establish a policy or custom of failing to investigate/punish misconduct, a failure to train/supervise guards properly, or ratification of the misconduct on the part of Coffee County. The district court denied summary judgment to the officers, holding that under the facts taken in the light most favorable to Cretacci, a reasonable jury could find that the officers had violated clearly established law. In addition, the district court refused to apply spoliation sanctions regarding the lost video footage, finding that the video had not been lost intentionally. Finally, prior to trial, the district court granted Defendants' motion in limine to exclude prior bad acts by Defendant Hare, which Cretacci intended to use to demonstrate Defendant Hare's motive and

knowledge as well as opportunity for all the officers. The district court denied Defendants' motion in limine to restrict discussion of the missing video, and at trial instructed the jury that defendants were not to be held responsible for the County's failure to preserve the video.

The case proceeded to trial, during which time Defendants moved for judgment as a matter of law, which the district court declined to grant. The jury returned a verdict finding that only Defendant Qualls had committed excessive force, awarding Cretacci only $1 in nominal damages. Cretacci moved for a new trial against Defendant Qualls on damages, and Defendant Qualls moved for renewed judgment as a matter of law. The district court denied both motions. Cretacci and Defendant Qualls appealed. Cretacci also appealed the earlier orders (1) excluding prior bad acts evidence and (2) granting summary judgment to Coffee County.

II.

### A. Cretacci's New Trial On Damages Claim

An appellate court reviews a district court's denial of a motion for a new trial on damages under an abuse of discretion standard. *See Heard v. Finco*, 930 F.3d 772, 774 (6th Cir. 2019). We may reverse a district court's denial of such a motion only if the plaintiff "unquestionably proved that they deserved more damages through uncontradicted and undisputed evidence." *Id.* (quoting *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996)) (internal quotation marks omitted). A district court does not abuse its discretion where "the verdict is supported by some competent, credible evidence." *Walker v. Bain*, 257 F.3d 660, 674 (6th Cir. 2001).

Cretacci moved for a new trial based on the jury's award of only nominal damages against Defendant Qualls. He argues on appeal solely that because (1) he testified that he felt pain while he was tased, (2) Defendant Qualls conceded that tasers are painful, and (3) there was no evidence

presented that tasers are not always painful, the jury was required to award some amount of damages to compensate him for the pain he experienced. [2] We disagree.

As the jury instructions—which Cretacci does not contest—stated, Cretacci bore the burden of proving his damages by a preponderance of the evidence. The only evidence he points to on appeal regarding physical pain is his own testimony that the tasing was painful, and Defendant Qualls's testimony that tasers in general cause pain, *see* R. 128 at PID 2785 ("I mean, [being tased is] uncomfortable, but it's -- to me, it don't change -- it don't make you black out, it just hurts, it's painful, and it's -- in whatever area."). Cretacci omits discussion of the contrary evidence the jury heard with respect to his injuries. Defendants presented testimony that Cretacci continued his usual workout routine following the incident, and video deposition testimony from a nurse that Cretacci was not treated for injuries following the incident, and her opinion that "if he had been hurting, he would have complained." R.109-1 at PID 2396. Further, the jury heard testimony from Qualls that the taser failed to "have the effect [he] wanted it to," and that he believed that Cretacci was only "more agitated and aggressive" after being tased. R.128 at PID 2789. In light of Defendants' contrary evidence, the jury was entitled to find that Cretacci's showing did not constitute sufficient proof that he suffered compensable harm. *Cf. Walker*, 25 F.3d at 674 ("[The plaintiff] had the burden of proving damages, and the only evidence of damages was [his] self-serving testimony about his mental distress. . . . The jury was free to accept or disregard [his] statement, and it chose to disregard it."). The district court thus did not abuse its discretion in denying Cretacci's motion for a new trial on damages.

---

[2] Qualls appears to argue that Cretacci claims he is entitled to damages merely because his constitutional rights were violated. However, Cretacci is quite clear that he is seeking damages for the pain he felt while being tased.

**B. Cretacci's Rule 404(b) Claim**

Under Federal Rule of Evidence 404(b), evidence of a prior bad act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). District courts analyze 404(b) questions in a three-step process:

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second*, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). In general, we review a district court's evidentiary rulings for abuse of discretion. *See United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015). There is, however, a conflict within this circuit regarding whether decisions concerning Rule 404(b) are reviewed under an abuse of discretion or de novo standard. *See id.* Cretacci's 404(b) claim fails even under a de novo standard, and thus we need not resolve this split here. *See id.*

Cretacci alleges that the district court erred when it excluded under Rule 404(b) prior incidents during which Defendant Hare allegedly used force against other inmates in retaliation for verbal disrespect. He claims that those incidents are probative of Defendant Hare's motive in assaulting Cretacci: "retaliat[ion] for mere words." First Br. of Plaintiff-Appellant at 46-47. He additionally claims the incidents are probative of Defendant Hare's knowledge of his ability to, and his and the other officers' opportunity to, "engage in misconduct." *Id.* at 50. The district court determined that motive was irrelevant to use- of-force claims, and that the court was "not convinced evidence of the other incidents is probative of [knowledge or opportunity], or that any

probative value is not substantially outweighed by the prejudicial effect of allowing proof regarding the other incidents." R. 73 at PID 1099.

First: motive. Any probative value of the acts proffered for this purpose is substantially outweighed by the acts' potential prejudicial effect in this case. The district court was correct that motive is not an element of a claim of excessive force; the inquiry is objective. *See Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015). However, Cretacci is also correct that in this case—because Cretacci's and Defendants' version of the events differ—motive could be a factor that could help the jury decide whose story to credit. *See United States v. White*, 815 F. App'x 27, 32-33 (6th Cir. 2020) (Moore, J., concurring in the judgment) (noting that even though "entrapment deals with the government's objective conduct," "a district court could, within its broad discretion, reasonably conclude that an agent motivated by an illicit objective . . . is more likely to engage in illicit inducement than an agent motivated by a legitimate objective. . . . This means that evidence of the government's motive may be relevant to proving government inducement of the crime."); *cf. United States v. Cummins*, 969 F.2d 223, 226 (6th Cir. 1992) ("Evidence of motive . . . substantially assisted the trier of fact in its determination of whether the Government presented a credible case."). It paints with too broad a brush to declare that motive is never relevant where intent is not an element of a claim.

But the probative value of these acts for motive is less forceful in this case. Prior bad acts are not necessary for the jury to understand that Defendant Hare may have retaliated due to mere words, rather than physical resistance by Cretacci. That motive is uncomplicated and can be inferred without knowledge of prior acts. While Cretacci is correct that a jury might "naturally question *why* Hare would provoke or start a physical altercation in the first place," First Br. of Plaintiff-Appellant at 46, that question is answered by Cretacci's account of the events.

Further, introducing the prior acts to evidence Defendant Hare's motive in the manner desired by Cretacci would pose a risk—even with a limiting instruction—that the jury would use the acts as propensity evidence, especially as the two purposes are very similar in this case. *Cf. United States v. Stout*, 509 F.3d 796, 802 (6th Cir. 2007) (prior acts in question would be too prejudicial in part because of "the high probability that the jury would use it to improperly convict [the defendant] of the current charges based on a propensity inference"); *Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x. 500, 507 (6th Cir. 2012) ("[W]hat the . . . testimony would go to prove is that [the defendant] is the sort of person who would unjustifiably tase someone, which tends to show that his tasing of [the plaintiff] is also unjustified. This is precisely the sort of propensity reasoning Rule 404(b) forbids.").

Cretacci walks this line himself: he states that "the other-acts evidence appears to show" that "Cretacci's version [of the events] is more likely. Verbal disrespect, such as arguing with officers, is precisely the type of thing that sets off Hare," and that the acts "would . . . establish that Hare consistently retaliates against verbal backtalk with physical force." First Br. of Plaintiff-Appellant at 46, 49. This argument sounds similar to the (forbidden) propensity argument that a bad motive in a prior incident means a defendant is more likely to have a bad motive in the incident in question. Even if none of the acts were "especially horrific or otherwise inflammatory," *id.* at 48, they are still potentially prejudicial because of their possible use as propensity evidence. Accordingly, the district court did not err in concluding that the limited probative value of the evidence regarding motive is thus substantially outweighed by the danger of unfair prejudice.

Second: knowledge and opportunity. It is not clear why knowledge or opportunity would even be at issue in this case, and thus why the prior acts would be admissible to demonstrate them. *See United States v. Stephens*, 549 F.3d 459, 463 (6th Cir. 2008) ("[E]vidence is not admissible

under Rule 404(b) unless it is probative of an issue that is actually material. . . ." (citing *United States v. Merriweather*, 78 F.3d 1070, 1076-77 (6th Cir. 1996))).

Knowledge may be at issue in a case where a defendant alleges that he did not know a fact critical to liability. *Cf. United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir. 1994) ("Knowledge is a 'material issue' when the defendant claims he was unaware that he was committing a criminal act."). Knowledge may also be material in a case where the identity of the perpetrator is at issue, as a person having knowledge of something integral to an act makes it more likely that the person committed that act. The case Cretacci cites in support of his knowledge argument, *United States v. Barrett*, involved such an issue of identity. 539 F.2d 244, 248 (1st Cir. 1976) ("Here, [the defendant's] expertise with alarms indicated that he had the skill to wire off the alarm system prior to the break-in and accordingly helped identify him as one of the guilty parties. . . . And identity was a main issue in his case. . . . Materiality to identity, as to guilty knowledge, intent or motive, is a reason often accepted for admitting evidence of this type.").

Regarding opportunity, as *United States v. Jobson* (the case Cretacci cites as support for his opportunity argument) states, "[e]vidence used to establish opportunity is evidence that shows 'access to or presence at the scene of the crime' or the possession of 'distinctive or unusual skills or abilities employed in the commission of the crime charged.'" 102 F.3d 214, 221 (6th Cir. 1996) (quoting 1 MCCORMICK ON EVIDENCE § 190, at 807 (John William Strong ed., 4th ed. 1992)). Opportunity is logically only relevant in a case where the defendant argues that he did not commit the act in question, either because the act never occurred or because someone else committed the act. *Cf. United States v. Spikes*, 158 F.3d 913, 930 (6th Cir. 1998) (noting, in a case where the defendant was charged with possession of drugs found in his residence, that opportunity "was

never at issue during the trial" as the defendant "admitted that he had been inside the house prior to the search").

Neither knowledge nor opportunity appear to be at issue here. Defendants have not alleged that they did not have the knowledge or opportunity to use excessive force against Cretacci. They freely admit that they were involved in the altercation with Cretacci. Defendants only dispute what exactly happened during that altercation, and in doing so they do not claim that they did not have the opportunity or knowledge to commit any of the alleged acts. Cretacci argues that the prior acts show the "opportunity, by *all* the guards, to engage in violence freely." First Br. of Plaintiff-Appellant at 50. But this does not speak to any element of the excessive force claim, which, as stated, is an objective inquiry. There is no question that Defendants were physically at the scene or that they used force against Cretacci. While they may in this instance have had "distinctive abilities to commit wrongdoing," First Br. of Plaintiff-Appellant at 51-52, such abilities are only relevant when there is a need to link the defendant with the crime or action at issue. Here, there is no dispute that the officers were involved in the underlying altercation. Cretacci's argument thus in reality goes more towards motive—why the officers acted as Cretacci alleges they did—than knowledge or opportunity. And, as described, the potential prejudicial effect of the prior acts evidence when used for motive substantially outweighs its probative value.

The district court therefore properly excluded the prior acts of Defendant Hare.

**C. Cretacci's Appeal of the District Court's Grant of Summary Judgment to Coffee County**

We review a district court's grant of summary judgment de novo, taking the facts in the light most favorable to the non-movant "and drawing 'all justifiable inferences' in his favor." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A movant may only be granted summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is inappropriate where a reasonable jury could find for the nonmoving party. *See Baynes v. Cleland*, 799 F.3d 600, 606 (6th Cir. 2015).

As a threshold matter, Coffee County argues that we do not have jurisdiction to review this issue, as Cretacci did not specify in his notice of appeal that he was appealing the order granting summary judgment. Federal Rule of Appellate Procedure 3(c)(1)(B) states that "[t]he notice of appeal must . . . designate the judgment—or the appealable order—from which the appeal is taken." Cretacci's Notice of Appeal states that he "appeals both the Judgment, entered on May 18, 2021 . . . and also the Order Denying New Trial on Damages, entered on July 19, 2021 . . . ." R. 119 at PID 2522. While the notice does not specify that Cretacci intends to appeal the district court's earlier summary judgment order, we have held that "an appeal from a final judgment encompasses all prior rulings and orders where the appellant does not 'designate specific determinations in its notice of appeal.'" *Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 752 (6th Cir. 1995)); *see also Newman v. Fed. Express Corp.*, 266 F.3d 401, 404 (6th Cir. 2001); Fed. R. App. P. 3(c)(4), (6). As Cretacci did not designate specific determinations in his notice, and did state that he was appealing the final judgment, we have jurisdiction to review the district court's order granting summary judgment.

Moving on to the merits, Cretacci argues that the district court improperly granted summary judgment for Coffee County on his municipal liability claim. In order to establish municipal liability under § 1983, a plaintiff must demonstrate that the municipality's custom or policy caused his injury. *See J.H. v. Williamson County*, 951 F.3d 709, 720 (6th Cir. 2020). In the process, the plaintiff must:

demonstrate one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."

*Wiley v. City of Columbus*, 36 F.4th 661, 670 (6th Cir. 2022) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Cretacci alleges that Coffee County should be liable for the excessive force violation he suffered for three reasons: the County "1) Failed to investigate wrongdoing as a matter of custom, 2) Ratified the wrongdoing by failing to investigate and then deleting the video, and/or 3) Exhibited a pattern of misconduct showing a widespread custom of abuse."[3] First Br. of Plaintiff-Appellant at 53. We analyze each of his claims separately.

*1. Failure to Investigate – Lack of Investigatory System*

Cretacci posits that "a reasonable jury could have found that the County had a policy or custom of not investigating wrongdoing by the guards," and that this policy or custom "could have been the moving force for wrongdoing committed by the guards." First Br. of Plaintiff-Appellant at 53-54. In support of this proposition, he cites testimony from the Coffee County Sheriff Chad Partin—who took office after Cretacci's altercation took place—that Partin was not "aware of" a system for investigating wrongdoing in the jail before he took office, at which time he instituted a formal office of internal affairs to address such issues. R. 40-2 at PID 226. In response, the County points to the attestation by Chief Deputy of the Coffee County Jail Frank Watkins that prior to the creation of the formal system, "the Coffee County Sheriff's Department did have a system of

---

[3] In his complaint, Cretacci also argued that the County was liable via failure to train/supervise. However, he appears to have dropped this argument, as he does not mention it in his briefs on appeal.

investigating allegations of prisoner abuse." R. 50-1 at PID 761. Watkins goes on to describe in some detail the informal method by which complaints were investigated at the time.

Cretacci contends that because at the summary judgment stage the district court was required to view the facts in the light most favorable to him, the court should have found that there was sufficient evidence that the County did not have any system of investigation such that his claim survived summary judgment. However, the only evidence that Cretacci points to in support of his claim that the County did not have any system to investigate complaints is the statement from Partin that he was "not aware" of a prior formal system before he assumed office—not that a system did not exist. This statement—especially where, as here, there is competing testimony from someone who actually worked in the prison at the time stating that an informal system did exist—is no more than a "scintilla" of evidence in his favor, and is thus insufficient to allow his claim to survive summary judgment. *See Anderson*, 477 U.S. at 252. The district court was correct to find for the County on this ground.

### 2. *Ratification*

On a ratification claim for municipal liability under § 1983, a plaintiff must demonstrate that "an official with final decision making authority ratified illegal actions." *Burgess* 735 F.3d at 478. This involves proving that a "deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion). Cretacci's ratification argument states that "a reasonable jury could conclude that the County ratified the misconduct in this case specifically, first by failing to investigate it, and second by deleting the evidence." First Br. of Plaintiff-Appellant at 55. Cretacci's argument fails for three reasons.

First, the allegedly inadequate investigation into Cretacci's claim is not, on its own, enough to create municipal liability, even under a ratification theory. *See Pineda v. Hamilton County,* 977 F.3d 483, 495-96 (6th Cir. 2020) (stating that "[b]ecause municipal liability requires an unconstitutional 'policy' or 'custom,' we have held that an allegation of a *single* failure to investigate a single plaintiff's claim does not suffice," and that the plaintiff "provided no basis for concluding that any failure to investigate his own claim caused his earlier injury"). And, as will be described in the following section, Cretacci has inadequately alleged a pattern on the part of the County of failing to investigate comparable claims. *See id.* at 495 ("'[A] claim based on inadequate investigation' requires 'not only an inadequate investigation in this instance,' but also 'a clear and persistent pattern of violations' in earlier instances." (quoting *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017))).

Second, Cretacci does not even identify who the supposed official with "final decision making authority" was who specifically decided not to investigate the incident. This is fatal to his ratification claim based on the failure to investigate. *See Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) ("Plaintiff does not name a final decisionmaker, but rather alleges that the Cleveland police department, as a whole, ratified the officers' conduct. . . . This is insufficient to establish the requisite degree of culpability.").

Third, putting aside the fact that the district court determined (while ruling on Cretacci's spoliation motion) that the video of the altercation was not deleted intentionally, Cretacci points to no authority to support his proposition that a single act of deletion of evidence by a municipal decisionmaker can constitute ratification, or any reason why that single act would suffice when a single instance of failure to investigate does not. The only cases he cites on this issue do not concern municipal liability, and are therefore inapposite. *See Bass v. Robinson*, 167 F.3d 1041,

1047-48 (6th Cir. 1999) (excessive force claim against individual officers); *In re Flint Water Cases*, 960 F.3d 303, 326 (6th Cir. 2020) (§ 1983 bodily integrity claims against individual state and city officials). For these reasons, his ratification argument fails. *Cf. Wiley*, 36 F.4th at 670 ("To prevail in this [ratification] claim [the plaintiff] must show a custom of similar incidents such that ratification of those incidents establishes acquiescence."); *Williams v. Ellington*, 936 F.2d 881, 885 (6th Cir. 1991) ("[The defendant] cannot be held liable for the ratification of the search in question, because this single, isolated decision can hardly constitute the 'moving force' behind the alleged constitutional deprivation.").

### 3. *Custom of Abuse/Failure to Investigate or Punish*

Finally, Cretacci alleges that the County has shown deliberate indifference to misuse of force in the jail, by failing to punish and/or investigate past misconduct as well as his own incident. A plaintiff can demonstrate municipal liability by demonstrating that the municipality has "fail[ed] to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020). For such a claim, a plaintiff must demonstrate: "1) a clear and persistent pattern of [inaction]; (2) notice, or constructive notice of such pattern, to [the municipality]; (3) tacit approval . . . amounting to an official policy of inaction; and (4) that the custom or policy of inaction was the 'moving force,' or direct causal link, behind the constitutional injury." *Garreston v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)). A failure to investigate or punish claim "requires 'not only an inadequate investigation in this instance,' but also 'a clear and persistent pattern of violations' in earlier instances." *Pineda*, 977 F.3d at 495 (quoting *David*, 706 F. App'x at 853). The earlier violations "must concern comparable claims." *Id.* (quoting *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019)).

In his brief on appeal, Cretacci offers the following prior incidents as evidence of his claim. Several of them are too dissimilar to his incident to be used to establish a clear pattern, and the remaining violations are insufficient standing alone to do so.

### a.  September 29, 2015 Incident

This prior incident involved alleged assaults by Coffee County guards against inmates during a riot. The assaults allegedly involved guards slamming inmates' heads into the floor, shooting inmates with pepper ball guns, tasing unresisting inmates, punching inmates in the face, and beating inmates. According to Cretacci, no guards were investigated or disciplined for this incident. This incident is not comparable to Cretacci's. In a separate case, the district court described this event as a "scene of complete chaos in the moments leading up to the guards' entry." *Allsopp v. Foust*, No. 4:17-cv-41-CHS, Doc. 96, at PID 594 (E.D. Tenn. August 5, 2020). The district court correctly rejected the incident's use as evidence supporting the plaintiff's claim for *Monell* liability, as it was too dissimilar to the incident at the heart of the plaintiff's case ("unprompted escalation" by the defendant guard). *See id*. at PID 595. A situation involving a chaotic riot by inmates is simply not comparable to Cretacci's allegations. This incident thus cannot be used to establish a pattern of violations in this case.

### b.  January 14, 2017 Incident

On this date, Cretacci was allegedly "shot with pepper balls without being given any chance to comply with [Officer Cody Foust's] orders, and then again *while* in the process of complying." First Br. of Plaintiff-Appellant at 24.  This incident, however, cannot be used to support a pattern of violations because we have already found in a separate opinion that the force used was not constitutionally excessive. *See Cretacci v. Call*, 988 F.3d 860, 869-70 (6th Cir. 2021). Further, the incident is also dissimilar from Cretacci's present case, as it involved officers responding to a

threat that an inmate intended to stab somebody. *See id.* Cretacci thus cannot use this incident to establish a pattern of violations.

### c. August 10, 2017 and September 15, 2017 Incidents

As the district court correctly noted, Cretacci has provided no evidence that any complaints were made about either of these two incidents. And nothing about these incidents—which apparently involved inmates who were taken down to the ground and restrained following indications of aggression and their refusal to comply with a guard's orders—smacks so strongly of unconstitutionality that their mere occurrence would put the County on notice that excessive force may have occurred. Without complaints or obviously unconstitutional conduct, there is no reason that the County would have been aware that these incidents potentially involved unconstitutional excessive force, and thus no reason for the County to investigate or punish the guards for them. *Cf. Loy v. Sexton*, 132 F. App'x. 624, 627 (6th Cir. 2005) (finding official not subject to supervisory liability under § 1983 where "no *sua sponte* investigation by [the official] was warranted" as "[t]he reports describing the arrest . . . do not indicate that" excessive force was used, and noting that "[i]n the absence of a 'strong' indication of unconstitutional conduct, [the official's] failure to conduct an investigation was reasonable" (quoting *Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002))). These incidents therefore cannot establish a pattern of violations.

### d. March 27, 2018 Incident

Cretacci admits that this incident involves a use of force by Officer Hare for which he was disciplined. Despite Cretacci's contention that it was only "minor," First Br. of Plaintiff-Appellant at 27, Hare's discipline was more than a slap on the wrist. He was suspended for 24 work hours and required to attend training regarding use of force. Moreover, the record reflects that the

"punishment would have been 48 hours—four days off work—but was reduced because it was Officer Hare's first offense." R. 54 at PID 800. And the district court found that this punishment was consistent with the written procedures for the Coffee County Sheriff's Department. This incident only evidences that the County did at least in some instances punish officers for excessive force. It lends no support to Cretacci's theory that officers were never investigated or punished, and cannot be used to evidence a pattern of violations.

### e. October 05, 2016; February 07, 2017; and August 29, 2017 Incidents

The district court found these remaining incidents—all involving allegedly unprovoked uses of force on the part of guards against non-resisting inmates during everyday situations, in which complaints were made—"do appear similar to the incident at issue in this lawsuit." R. 54 at 801. We agree. And it is not clear whether these incidents were ever investigated. However, regardless of whether they were, the district court correctly concluded that these three incidents, standing alone, are not sufficient to establish the consistent pattern of comparable violations necessary to demonstrate a custom of inaction regarding excessive force.[4] These incidents happened several months apart from each other, with the most recent occurring over a year before Cretacci's incident. And the March 27, 2018 incident described above—the most recent incident cited by Cretacci—demonstrates that the County did at least sometimes punish officer misconduct.

Altogether, these three incidents, taking into account the full picture, are simply insufficient to demonstrate that the County has a "clear and persistent pattern of violations." *Pineda*, 977 F.3d 495. They do not give rise to the inference that the County has a custom "so permanent and well

---

[4] The claims that excessive force was used in the February 7 and August 29 incidents have been rejected by juries. *See Allsopp v. Foust*, 4:17-cv-41-CHS, Doc. 130 (E.D. Tenn. June 16, 2021); *Allsopp v. Hare*, 4:18-cv-56-SKL, Doc. 130 (E.D. Tenn. Oct. 21, 2021). Although those verdicts are currently being challenged, *see Foust*, 4:17-cv-41-CHS, Doc. 138 (Motion for Judgment Not Withstanding the Verdict/New Trial); *Hare*, 4:18-cv-56-SKL, Doc. 147 (Notice of Appeal), the verdicts nevertheless suggest that the force used in those incidents was not excessive, which would make the incidents useless for establishing a pattern of violations.

settled as to constitute a custom or usage with the force of law" of ignoring claims comparable to Cretacci's. *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010) (quoting *McClendon v. City of Detroit*, 255 F. App'x 980, 982 (6th Cir. 2007)); *see also id.* ("Although Plaintiff did present evidence that several inmates' medical requests were ignored by jail personnel, including [Plaintiff's], a jury could not reasonably infer from these five incidents alone that the County had a widespread, permanent, and well-settled custom of ignoring inmate requests."); *Wallace v. Coffee County*, 852 F. App'x. 871, 876 (6th Cir. 2021) (Six incidents not enough to establish municipal liability via custom); *Davidson v. City of Stafford*, 848 F.3d 384, 396-97 (5th Cir. 2017) ("[The plaintiff's] pattern relies on three cases . . . over three-and-a-half years to form the basis of the alleged pattern of constitutional violations. Without further context of the size of Stafford PD or the amount of arrests made over the corresponding period, these incidents are insufficient to establish a pattern of constitutional violations by the Stafford PD.").

The district court correctly granted summary judgment to Coffee County.

### D. Defendant Qualls's Renewed Judgment as a Matter of Law Claim

Courts of Appeal review a district court's denial of a motion for judgment as a matter of law de novo. *See Khalaf v. Ford Motor Co.*, 973 F.3d 469, 481 (6th Cir. 2020). The movant must demonstrate that there is no genuine dispute regarding any material fact and that he is entitled to judgment as a matter of law. *See id.* at 482. We must look at the evidence "in the light most favorable to the non-moving party," and may only grant the motion if no reasonable jury could find for the nonmovant. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citation omitted). At this stage we cannot "reweigh the evidence or assess the credibility of witnesses." *Id.* To prevail on his excessive force claim, Cretacci was required to show that "the officers' use of force was objectively unreasonable." *Westmoreland v. Butler County*, 29 F.4th 721, 727 (6th Cir. 2022).

Defendant Qualls appeals the district court's denial of his Rule 50(b) motion for renewed judgment as a matter of law, arguing that no reasonable jury could have found him liable for excessive force under the facts presented, and that the jury verdict was inconsistent in finding him but not his co-defendants liable. He alleges that there was "no evidence to support the jury's finding that defendant Qualls's use of a Taser to bring plaintiff into compliance was objectively unreasonable," taking into account "Cretacci's active resistance to the officers' efforts to subdue him and Cretacci's belligerent and aggressive behavior toward defendant Hare." Second Br. of Cross-Appellant at 41, 45. Qualls further claims that "it is undisputed that Cretacci actively resisted the officers' efforts to bring him to compliance." Fourth Br. of Cross-Appellant at 9. Finally, Qualls alleges that he is entitled to judgment as a matter of law due to qualified immunity. Qualls's arguments are unavailing.

The fatal flaw in Qualls's evidentiary argument is that the evidence at trial, as the district court highlighted in ruling on this motion, was not undisputed. While the officers involved attested that Cretacci acted belligerently and resisted the officers, Cretacci testified that he did neither of those things, R. 127 at PID 2556-63. Further, there were conflicts between the officers' reports and their testimony, *see, e.g.*, R. 127 at PID 2723-24, 2727, as well as conflicts between the trial testimony of the officers, *see, e.g.*, R. 128 at PID 2762, 2795 (Defendant Duke testifying that Cretacci threw his belongings down before swinging at Hare, while Defendant Qualls testifies that Cretacci had no belongings on him at the time); R. 128 at PID 2763, 2800-01 (Defendant Qualls testifying that despite Officer Duke's testimony, he did not tase Cretacci while he was on the ground), R 128, PID 2727, 2762 (Defendant Thomas testifying that Hare did not try to block the punch, while Defendant Duke testifying that Hare tried to block Cretacci's punch). In addition, there were potential conflicts between the officers' deposition testimony and trial testimony. R.

128 at PID 2799-2800. And there were parts of the officers' trial testimony that acknowledged a lack of memory. *See* R. 127 at PID 117. Finally, Cretacci asked that the video of the incident be preserved soon after it occurred. All of these factors could have made the officers' testimony appear less credible than Cretacci's in the eyes of the jury.

A reasonable jury could have credited Cretacci's version of events over the officers', and we cannot substitute our judgment for that of the jury. *See, e.g.*, *Pittman v. ANR Freight Sys.*, 47 F. App'x. 266, 272 (6th Cir. 2002) (Judgment as a matter of law not appropriate as "[t]he jury was entitled to resolve credibility issues and discrepancies in the testimony of the witnesses"); *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008) (No judgment as a matter of law as "the jury was ultimately entitled to make its own determination about the credibility of the evidence"); *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015) (In analyzing motion for judgment as a matter of law, court "may not weigh the evidence, pass on the credibility of witnesses, or substitute [our] judgment for that of the jury" (quoting *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010))).

And under Cretacci's version, he did not act belligerently or resist the officers, yet was tased by Defendant Qualls. A reasonable jury could conclude under that set of facts that Qualls's use of force (tasing Cretacci) was objectively unreasonable and thus excessive. *See Goodwin v. City of Painesville*, 781 F.3d 314, 324 (6th Cir. 2015) ("The constitutional analysis . . . turns on whether [the plaintiff] had ceased resisting as Officer Soto administered the two taserings."); *Browning v. Edmonson County*, 18 F.4th 516, 529 (6th Cir. 2021) ("[The plaintiff] had a clearly established constitutional right not [to] be tased under the circumstances. [The defendant] violated that right by tasing [the plaintiff] despite observing that [the plaintiff] was not resisting and expressed no verbal or physical behavior that was hostile or threatening."); *Brown v. Weber*, 555

F. App'x 550, 555 (6th Cir. 2014) ("[B]ecause [the plaintiff] was not actively resisting, a jury could find that [the defendant's] use of force [via taser] was excessive."). Defendant Qualls does not dispute that "tasing a non-resisting subject is unconstitutional." R. 113, Qualls's Reply to Motion for Judgment as a Matter of Law, at PID 2480. Thus, taking the facts in the light most favorable to Cretacci, as we must, *see Brown*, 779 F.3d at 410, we cannot conclude that no reasonable jury could have found that Defendant Qualls used excessive force.

Qualls's inconsistent verdict argument is similarly unsuccessful. When analyzing an inconsistent verdict claim, this Court "must 'look for a reasonable way' to view the case." *In re Brown*, 342 F.3d 620, 632 (6th Cir. 2003) (quoting *Morales v. Am. Honda Motor Co. Inc.*, 151 F.3d 500, 509 (6th Cir. 1998)). There is nothing inherently inconsistent about the jury finding that the actions of the other officers did not constitute excessive force, while Qualls's actions did. Qualls was the only officer alleged to have tased Cretacci. Even under the version of the facts alleged by Cretacci, Defendant Hare only pushed the plaintiff a few times, Defendant Collins took Cretacci down to the floor in a chokehold, and Defendants Thomas and Duke merely held Cretacci down while he was on the floor.

The jury was entitled to find that these actions were not objectively unreasonable, even if they came first in a sequence of events culminating in objectively unreasonable force on the part of Qualls. *Cf. Brown*, 342 F.3d at 631-32 (finding the jury not inconsistent where it held a corporation liable for breach of contract for unauthorized disbursement of a partnership's funds to a partner, but found that partner not liable on any claim). The jury was also entitled to credit some parts of the officers' version and some parts of Cretacci's version of the events and not credit other parts of each. Perhaps the jury believed the officers' testimony that Cretacci was initially belligerent/resisting, but believed Cretacci's testimony that he was not resisting when he was tased

by Qualls. There is thus a reasonable way to reconcile the jury's verdict with the facts, and the verdict is not inconsistent.

Finally, Qualls's argument regarding qualified immunity fails, as he did not raise this issue in his pre-verdict judgment as a matter of law motion. The issue is therefore at least forfeited and perhaps waived.[5] *See Sykes*, 625 F.3d at 304 ("The Defendants' failure to make a pre-verdict motion for judgment as a matter of law under Rule 50(a) on the grounds of qualified immunity precluded them from making a post-verdict motion under Rule 50(b) on that ground."). Even if it were not, the jury was, as described, entitled to credit Cretacci's version of the facts that he was compliant and not resisting, while being held down on the ground by multiple other officers, when Qualls tased him. And, as described, they were entitled to find under that version of the facts that Qualls's actions were objectively unreasonable. The law regarding tasing an unresisting individual is clearly established such that a reasonable officer in Qualls's shoes, under Cretacci's version of the facts, would understand that he was violating the law. *See, e.g., Goodwin*, 781 F.3d at 324; *Browning*, 18 F.4th at 529; *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010) ("[T]he right to be free from physical force when one is not resisting the police is a clearly established right." (quoting *Wynsong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008)); R. 113, Qualls's Reply to Motion for Judgment as a Matter of Law, at PID 2480 ("[T]asing a non-resisting subject is unconstitutional."). Qualls is thus not entitled to qualified immunity even if the issue were not waived. The district court was correct to deny Qualls's motion for judgment as a matter of law.

---

[5] We have used the terms forfeiture and waiver in this context. *Compare Sykes*, 625 F.3d at 304 *and Hanover Am. Ins. Co. v. Tattooed Millionaire Entertainment, LLC*, 974 F.3d 767, 771 (6th Cir. 2020) (noting that Hanover "forfeited its ability to 'renew' a motion for a directed verdict after trial under Rule 50(b)" when it had failed to make a Rule 50(a) motion in the first instance). Quall's argument fails under either standard.

III.

For the foregoing reasons, we AFFIRM the district court's orders (1) denying Plaintiff-Appellant's motion for a new trial on damages, (2) excluding prior acts evidence of Defendant Hare, (3) granting summary judgment for Defendant-Appellee Coffee County, and (4) denying Defendant-Appellee and Cross-Appellant Qualls's motion for judgment as a matter of law.